UNITED STATES of America,
Plaintiff-Appellee,

v.

Clarence **HILL**, Defendant-Appellant.

No. 73–1098.

United States Court of Appeals,
Fifth Circuit.

Aug. 30, 1974.

James O. Manning, Metairie, La. (Court-appointed), Clarence Hill, Atlanta, Ga., for defendant-appellant.

Gerald J. Gallinghouse, Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The validity of Clarence Hill's conviction for possession with intent to distribute heroin turns upon the constitutional correctness of searches of his residence and automobile. Our appellate task is to determine whether oral testimony before the issuing magistrate was properly employed to bolster an otherwise deficient affidavit for a search warrant, whether a warrantless search of Hill's automobile was Fourth Amendment-reasonable, and whether his sentence violated the equal protection clause. Under the unique facts of this case, we find the searches viable and affirm Hill's conviction and sentence.

I.

*The Residential Search*

On July 1, 1972, John Henry Phillips, Jr., an agent of the Bureau of Narcotics and Dangerous Drugs (BNDD), appeared before United States Magistrate Morey L. Sear to request a search warrant for the premises at 2363 N. Robertson Street, the New Orleans home of defendant Clarence Hill. Phillips' affidavit related his belief that Hill was concealing heroin there in violation of 21 U.S.C. § 841(a)(1). To demonstrate probable cause a lengthy memorandum was attached to his affidavit. The attachment set out tips obtained from four

confidential informants and from an anonymous phone caller together with related intelligence gathered by law enforcement officials.

Confidential source one had stated that during the month of June Hill had consigned three bundles of heroin to him for sale by revealing where the contraband was hidden, and that Hill, who was also known as "Hip Cat," was the brother-in-law of a convicted trafficker in heroin. Source two had observed Julius Wilkerson, also known as "Moon," and another man (not Hill) in Hill's 1971 white Buick handling six bundles of heroin as he spoke to them about a purchase of the illicit white powder. Source three had reported that Wilkerson was a "big time heroin pusher" with whom he had discussed the purchase of heroin on several occasions. Source four had told a fellow agent that during the previous month he had obtained heroin from a black male at Hill's address and had taken other persons there to purchase heroin. The continuing BNDD investigation of Hill had also uncovered the fact that another known heroin trafficker, Floyd Dupart, had been seen driving Hill's 1972 Plymouth and that in October of 1971 Wilkerson had sent Hill 1,350 dollars in New York City, which the agents surmised was to finance the purchase of heroin. Furthermore, Agent Phillips had been warned on June 30 by an anonymous female phone caller to "look out for Julius Wilkerson and Clarence Hill because they are selling dope," which she stated was heroin hidden in Hill's residence.

Before he issued the warrant, Magistrate Sear interrogated Phillips under oath as to the basis upon which he had gauged the reliability of each confidential source. Convinced that probable cause existed, the magistrate noted on the affidavit that he had asked the agent further questions and obtained additional information about the informers. As supplemented, he concluded that the affidavit authorized the issuance of a search warrant. Phillips, accompanied by other federal agents and New Orleans police detectives, executed the warrant by searching Hill's residence that afternoon and seized two bundles of heroin and other narcotics paraphernalia.

At the outset, Hill urges error in the district court's failure to suppress the seized evidence at a pretrial hearing, contending that Phillips' affidavit was a deficient predicate for the magistrate's adjudication of probable cause to search because (1) it did not disclose sufficient underlying circumstances to support the conclusion that Hill was a trafficker and possessor of heroin, and (2) it did not contain sufficient information from which the magistrate could determine that the confidential informants were reliable.

The fourth of our Bill of Rights secures people, houses, persons and effects from unreasonable governmental intrusion in terms which are eloquent in their simplicity.

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,* and particularly describing the place to be searched, and the persons or things to be seized. (emphasis added).

A judicial officer "may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation." Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159 (1933). "Probable cause is deemed to exist 'where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." United States v. Melancon, 462 F.2d 82, 89 (5th Cir. 1972), cert. denied, 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1973),

*quoting* United States v. Rich, 407 F.2d 934, 936 (5th Cir.), cert. denied, 395 U. S. 922, 89 S.Ct. 1775, 23 L.Ed.2d 239 (1969); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Whether a fact and circumstance matrix validly demonstrates probable cause is a determination committed to a neutral and detached magistrate. *See* Coolidge v. New Hampshire, 403 U. S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is fundamental that judicial review of his determination must be strictly confined to the information which was brought to his attention. Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■■ In his consideration of an affidavit, the issuing magistrate may rely on information to establish probable cause which does not reflect the personal knowledge of the affiant if "a substantial basis for crediting the hearsay is presented." Jones v. United States, 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed. 2d 697 (1960). In Aguilar v. Texas, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964), the Supreme Court propounded a two-pronged standard by which to judge whether an affidavit reciting the tip of an unnamed informer permits the magistrate, rather than the tipster or the investigating police officer, to draw the crucial inferences necessary to establish probable cause from the hearsay facts. He must be informed of the underlying facts and circumstances (1) from which the informant has concluded that the person to be searched is engaged in criminal activities, and (2) from which the affiant has concluded that the informant is credible or his information reliable. United States v. Chavez, 482 F.2d 1268 (5th Cir. 1973).

■ In the event the hearsay fails to pass muster under *Aguilar*, it may yet be introduced into the probable cause calculus if the magistrate can fairly state that "the tip, . . . when certain parts have been corroborated by in-dependent sources, is as trustworthy as a tip which would pass *Aguilar's* test without independent corroboration." Spinelli v. United States, 393 U.S. 410, 415, 89 S.Ct. 584, 588, 21 L.Ed.2d 637 (1969); *see, e. g.,* United States v. Lopez-Ortiz, 492 F.2d 109 (5th Cir. 1974); United States v. Summerville, 477 F.2d 393 (5th Cir. 1973); United States v. Black, 476 F.2d 267 (5th Cir. 1973); United States v. McNally, 473 F.2d 934 (3rd Cir. 1973); United States v. Marihart, 472 F.2d 809 (8th Cir. 1972) en banc), petition for cert. filed, 42 U.S. L.W. 3611 (U.S. Apr. 8, 1974) (No. 73–1561); United States v. Star, 470 F. 2d 1214 (9th Cir. 1972); United States v. Sultan, 463 F.2d 1066 (2d Cir. 1972); United States v. Fuller, 441 F.2d 755 (4th Cir.), cert. denied, 404 U.S. 830, 92 S.Ct. 74, 30 L.Ed.2d 59 (1971). Most recently, in United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), the Court held that a cumulation of circumstances recited in an affidavit may be sufficient to support the conclusion that the confidential informant was credible so as to meet the second prong of *Aguilar*.

> These [circumstances] were: (1) the allegation of the affiant that he regarded the informant as "prudent"; (2) the detail provided in the tip; (3) the fact that the affidavit also alleged that the accused had a reputation for being a trafficker in nontaxpaid liquor; and (4) the fact that the information given, with the allegations of the informant's purchases, was a declaration against the informant's penal interest.

United States v. Chavez, *supra*, 482 F.2d at 1271.

■■ Applying the Courts' tests to the case before us, the threshold question is did Phillips make sufficient information of a reliable nature known to Magistrate Sear to warrant a prudent man in believing that the defendant had committed an offense? The personal knowledge of source one connected Hill directly with the sale of heroin and re-

vealed a *modus operandi*. Source four, with specificity, personally established Hill's residence as the scene of numerous transactions in heroin. The information provided by the other confidential sources principally described Hill's associates as dope pushers but this, as well as the warning provided by the anonymous phone caller, provided some corroborative support for the information supplied by sources one and four.

Only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause, Beck v. Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial, McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967); in judging probable cause, issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense, United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 745, 13 L.Ed.2d 684 (1965); and their determination of probable cause should be paid great deference by reviewing courts, Jones v. United States, [*supra*], 362 U.S. at 270–271, 80 S.Ct. at 734–736; Spinelli v. United States, [*supra*], 393 U.S. at 419, 89 S.Ct. at 590–591.

United States v. Melancon, *supra*, 462 F.2d at 89–90.

█ Unquestionably, the information collected from the tipsters by Agent Phillips, if true, would persuade a man of reasonable caution that Hill, in all probability, was selling heroin and concealing his supplies at his home. Since the affidavit reveals sufficient facts and circumstances, albeit hearsay, founded in personal observation and participation, to permit Magistrate Sear to determine whether sources one through four were justified in concluding that Hill was engaged in the sale and distribution of heroin and that the criminal activity was transpiring at his residence, it

meets the first prong of the *Aguilar* standard. *See* United States v. Banks, 465 F.2d 1235 (5th Cir. 1972).

Agent Phillips was less rigorous in his written presentation of the facts and circumstances upon which he based his belief that his informants were supplying truthful information. Although the informer need not be identified, Gonzales v. Beto, 425 F.2d 963 (5th Cir.), cert. denied, 400 U.S. 928, 91 S.Ct. 194, 27 L.Ed.2d 189 (1970), only Phillips' identification of source three, whom he asserted in the affidavit to have been responsible for the convictions of numerous narcotics offenders, met the second prong of *Aguilar*. United States v. Mendoza, 433 F.2d 891 (5th Cir. 1970). We need not reach the questions of whether the hearsay intelligence of each informer was adequately corroborated under *Spinelli* standards by the other independent hearsay information or the BNDD agents' independent observations, or whether the affidavit, considered in its totality, produced a constitutionally sufficient result in conformity with the cumulative *Harris* equation, for we hold that the reliability and credibility of each informant was established to the satisfaction of *Aguilar* by Phillips' extrinsic testimony to the magistrate.

At the pre-trial suppression hearing, Agent Phillips testified as to the additional information he orally supplied Magistrate Sear when the latter questioned Phillips about the reliability of his informants at the time Phillips applied for the search warrant. Although sources one and two had not made any cases for the BNDD, the agent replied that both had furnished information about the New Orleans heroin traffic which had proven to be true and correct. Moreover, Freddie Williams was known to the BNDD as "one of the largest heroin traffickers who has ever resided in New Orleans." Phillips described source two as a reliable, cooperating individual. The sufficiency of this representation is bolstered by the specificity of the information source two provided. The reported heroin negotia-

tions were traced in detail by disclosure of dates, times, names of individuals, pinpoint location of a street corner agreement, Hill's auto license number, and the address of the ultimate supplies. The affidavit itself revealed that source three, who had furnished Phillips information since 1963, had been responsible for the arrest and conviction of numerous narcotics offenders. Although he was personally acquainted with the first three confidential informants, Phillips had learned of source four and his information just two days earlier from another BNDD officer, who had stated that source four was a good informer, having supplied true and correct information without, at that time, having made any cases. With this additional background Magistrate Sear initialed the following handwritten notation on the affidavit: "Further interrogation of Agent Phillips including information with regard to his informers supports issuance of this warrant."

Phillips' extra-affidavit statements were more than enough to supply the deficits from *Aguilar's* second requirement. According to Phillips, each informant had, at the least, supplied BNDD agents in the past with information which had proven to be true and correct. "[S]uch a factual statement of past reliability provides sufficient basis for the magistrate to gauge independently the reliability of the informer." United States v. Mendoza, *supra*, 433 F.2d at 894. Each informant furnished information that was based on personal observation and substantiated by instances of past reliability. Moreover, Phillips spoke from personal knowledge as to the credibility of and the information provided by sources one through three. That the tip and reliability of source four were communicated to the affiant by another officer is of no decisional

moment. United States v. Simpson, 484 F.2d 467 (5th Cir. 1973); United States v. Impson, 482 F.2d 197 (5th Cir. 1973), cert. denied, 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed. 246 (1974); United States v. Trabucco, 424 F.2d 1311 (5th Cir.), petition for cert. dismissed, 399 U.S. 918, 90 S.Ct. 2224, 26 L.Ed.2d 785 (1970).[1] Such personal observations of a fellow officer pursuing the same investigation can be presumed reliable. United States v. Hayles, 471 F.2d 788 (5th Cir.), cert. denied, 411 U.S. 969, 93 S.Ct. 2159, 36 L.Ed.2d 690 (1973). The fact that Phillips rather than his fellow officer imparted this particular information to the magistrate in no way attenuates its accuracy or the credibility of the informant.

 Hill contends, however, that Fed.R.Crim.P. 41(c) does not permit a federal magistrate to rehabilitate a deficient affidavit with oral testimony. It has been an accepted principle in this and other circuits that a federal court, reviewing a State conviction, may consider an affiant's oral testimony, extrinsic to the written affidavit, which is sworn before the issuing magistrate, in determining whether the warrant was founded on probable cause. *See, e. g.,* Campbell v. Minnesota, 487 F.2d 1 (8th Cir. 1973); United States ex rel. Gaugler v. Brierley, 477 F.2d 516 (3d Cir. 1973); Boyer v. Arizona, 455 F.2d 804 (9th Cir. 1972); Radcliff v. Cardwell, 446 F.2d 1141 (6th Cir. 1971); Frazier v. Roberts, 441 F.2d 1224 (8th Cir. 1971); United States ex rel. Pugach v. Mancusi, 411 F.2d 177 (2d Cir.), cert. denied, 396 U.S. 889, 90 S.Ct. 172, 24 L. Ed.2d 163 (1969); Sherrick v. Eyman, 389 F.2d 648 (9th Cir.), cert. denied, 393 U.S. 874, 89 S.Ct. 167, 21 L.Ed.2d 144 (1968); *See also* Lopez v. United States, 370 F.2d 8 (5th Cir. 1966).[2]

---

1. *See* United States v. Stratton, 453 F.2d 36 (8th Cir.), cert. denied, 405 U.S. 1069, 92 S.Ct. 1515, 31 L.Ed.2d 800 (1972); *see also* Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L. Ed.2d 306 (1971).

2. In two cases arising from state criminal convictions the Supreme Court intimated that sworn oral testimony before a state magistrate in an application for a search or arrest warrant may constitutionally supplement an affidavit which, on its face, fails to

The constitution does not mandate that a sworn statement in support of an application for a search warrant be reduced to writing. "The Fourth Amendment requires *only* that the judicial officer issuing a search warrant be supplied sufficient information, under oath or affirmation, which would support an independent judgment that probable cause exists for the warrant's issuance." United States ex rel. Gaugler v. Brierley, *supra*, 477 F.2d at 522 (footnote omitted); *see* Boyer v. Arizona, *supra*; Sherrick v. Eyman, *supra*. In federal criminal proceedings the issuance of search warrants is subject to the added governance of Fed.R.Crim.P. 41(c), which, as of the date the warrant *sub judice* was issued, provided:

> (c) Issuance and Contents. A warrant shall issue only on affidavit sworn to before the judge or commissioner and establishing the grounds for issuing the warrant. If the judge or commissioner is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched.

The notes of the advisory committee state that the rule was intended to codify and restate existing law and practice as of the date it became effective on October 20, 1949.

The sworn additional information provided by Agent Phillips adequately apprised Magistrate Sear of circumstances indicating the past and present reliability of the four informers. In view of the fact that the magistrate's own conscientious attention to his duty enabled him to satisfy himself of the persuasiveness of the facts purporting to show probable cause and that this court can readily determine that the warrant and concomitant search comport with constitutional requirements, we join the Eighth and Tenth Circuits in holding this supplementation was permissible under Rule 41(c) as it was written at the time Hill's search warrant issued. *See* United States v. Beasley, 485 F.2d 60 (10th Cir. 1973); United States v. Marihart, *supra*; Leeper v. United States, 446 F.2d 281 (10th Cir.), cert. denied, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1971); United States v. Berkus, 428 F.2d 1148 (8th Cir. 1970); Lopez v. United States, *supra*; Billespie v. United States, 368 F.2d 1 (8th Cir. 1966).

Under different facts, the Ninth Circuit decided that physical incorporation of all information into the affidavit was required. "[U]nder Rule 41(c) the written affidavit presented to the federal issuing officer and to the reviewing court must alone establish that probable cause exists." United States v. Anderson, 453 F.2d 174, 177 (9th Cir. 1971); *accord* United States v. Noreikis, 481 F.2d 1177 (7th Cir. 1973) (dictum); United States v. Hatcher, 473 F.2d 321 (6th Cir. 1973) (dictum); United States v. Bailey, 458 F.2d 408 (9th Cir. 1972) (dictum); United States v. Sterling, 369 F.2d 799, 802 n. 2 (3rd Cir. 1966) (dictum); *see* United States v. Pinkerman, 374 F.2d 988 (4th Cir. 1967) (dictum); Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966) (dictum); *see also* United States v. Freeman, 358 F.2d 459 (2nd Cir.) (dictum), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966).

The *Anderson* Court reasoned that the "four corners" of the affidavit had to constitute the alpha and omega for judging probable cause in order to insure that "the reviewing court may determine whether the constitutional requirements have been met without reliance upon faded and often confused memories." United States v. Anderson, *supra*, 453 F.2d at 177.

---

establish probable cause for its issuance. *See* Whiteley v. Warden, Wyoming State Penitentiary, *supra*, 401 U.S. at 565 n. 8, 91 S.Ct. at 1035; Aguilar v. Texas, *supra*, 378

U.S. at 109 n. 1, 84 S.Ct. at 1511; United States ex rel. Gaugler v. Brierley, *supra*, 477 F.2d at 520–522.

The reasoning supporting the Ninth Circuit's rule is not apropos here. Phillips did not attempt to supply Magistrate Sear with remote or minute details of Hill's conduct based upon his ability to recall bits and pieces of past conversations. His supplementation only furnished facts known to him and his fellow-officer that indicated the informers' information should be credited. Phillips' recall of this disclosure shows that his memory of these matters was neither clouded nor befuddled. We can conclude without difficulty that the warrant was duly authorized. Furthermore, this situation furnishes no occasion to apply the exclusionary rule to bar the evidence of Hill's criminality that was obtained in executing the warrant. Phillips acted properly in going to the magistrate and seeking a warrant. Magistrate Sear acted properly in calling for additional information to demonstrate credibility. Thus, the only error attributable to the procedure they followed is a technical one that would in no way serve the deterrent purposes of the rule.

> The rule is calculated to prevent, not to repair. Its purpose is to deter —to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it.

Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960), *quoted in* United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974). This is especially so since Rule 41(c) has now been amended to expressly permit oral interrogation by the magistrate.[3]

By these express new provisions, the Rule has clarified police and magisterial conduct for the future in a more effective manner than the exclusionary rule ever could. Magistrate Sears' handwritten notation on the face of the affidavit signaled his reliance on the additional information he obtained from Agent Phillips. That he was not omniscient enough to also transcribe and incorporate the agent's testimony is not fatal since the facts obtained were within the agent's direct knowledge and sufficiently uncomplicated to enable the court to obtain a reliable reproduction.

Although we do not overlook the fact that a different result would obtain if the affidavit had been procured after October 1, 1972, it would be illogical and unjust to overturn this conviction on the basis of a technical default that in nowise mitigated the reliability of the information in the affidavit or its procedural compliance with the Fourth Amendment. *See* United States v. Mendoza, 491 F.2d 534 (5th Cir. 1974); United States v. Soriano, 482 F.2d 469 (5th Cir. 1973); modified on other grounds, 497 F.2d 147 (5th Cir. 1974) (en banc); United States v. Nolan, 413 F.2d 850 (6th Cir. 1969).

> [T]he Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.

---

3. In pertinent part the amended rule provides:

(c) *Issuance and contents.* A warrant shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. If the federal magistrate or state judge is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay evidence in whole or in part. *Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit.* (Italicized language added by Amendment).

We of course note that under the amended rule such interrogation and the affiant's responses must be recorded and made a part of the affidavit.

They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

United States v. Ventresca, *supra,* 380 U.S. at 108, 85 S.Ct. at 746. The district court's denial of defendant's motion to suppress the physical evidence seized during the search of Hill's residence must be affirmed.

## II.

### *The Automobile Search*

The BNDD agents and police officers executed the search warrant at Hill's residence on the afternoon of July 1, 1972. After the agents had entered and secured the house, Agent Phillips gave Hill a copy of the warrant and advised him of his constitutional rights. Hill denied there was heroin on the premises, but did relinquish a gun and 17,991 dollars in cash. The agents began searching and soon discovered a box of glassine envelopes of the kind commonly used to package heroin.

When the officers began to "get hot," Hill asked whether he would be the only one taken to jail if he surrendered the heroin. At Hill's request Phillips signed his name to an agreement written on the back of the search warrant in which the agent promised that if Hill surrendered all the heroin in his possession and if he were the sole person responsible for it, his wife and child, who were also present, would not be arrested. At this juncture Hill pointed to a lamp fixture next to him from which the agents retrieved two bundles of heroin wrapped in a brown packet.

While the agents continued to search, detectives of the New Orleans Police Department spoke with Hill's 7-year old son in the rear of the house away from his parents. The officers showed him a bundle of the seized heroin and asked if he had ever seen his father handling this sort of white powder. The child replied that he had seen his father carry a bag containing bundles of the white powder out to his car, which was parked around the corner. Goading him on, the officers told him he did not know what he was talking about and promised him $3.75 if he would show them where the car was located. The child then repeated to Phillips his story that if the white powder was not in the kitchen closet with the money, it would be in the car. Agent Phillips picked up a set of car keys laying on a table and the child led the officers half a block to Hill's Buick, which was searched and found to contain 40 bundles of heroin and other narcotics paraphernalia.

Hill contends that the warrantless search of his automobile was conducted in the absence of exigent circumstances and, therefore, was unconstitutional under the rationale of Coolidge v. New Hampshire, *supra.* That the agents had probable cause to seize the vehicle is undisputed. The intelligence gathered by Phillips and recited in the affidavit implicating the Buick in unlawful heroin transactions was reinforced by fresh information provided by Hill's son that if Hill's cache was not in the house it would be found in the car. Moreover, the known accessibility of the automobile to Hill's confederates supplied exigent circumstances for a seizure despite the fact that the BNDD agents had immobilized Hill, his wife and his car keys.

In United States v. Soriano, 497 F.2d 147, 149 (5th Cir. 1974) (en banc), this court, relying on Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970), reasoned "that where automobiles and their contents are concerned, circumstances which justify an immediate seizure as reasonable justify an immediate search as well."

That Hill's reliance upon Coolidge v. New Hampshire, *supra,* is unfounded is

made clear by the following language from Cardwell v. Lewis, 417 U.S. 583, 593, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1974):

> Since the Coolidge car was parked on the defendant's driveway, the seizure of that automobile required an entry upon private property. Here, as in Chambers v. Maroney, 399 U.S. 42, [90 S.Ct. 1975, 26 L.Ed.2d 419] (1970), the automobile was seized from a public place where access was not meaningfully restricted. This is, in fact, the ground upon which the *Coolidge* plurality opinion distinguished *Chambers*, 403 U.S., at 463 n. 20, 91 S.Ct. at 2036. See also Cady v. Dombrowski, 413 U.S. 266 at 446–447, [93 S.Ct. 2535, at 2530–2531, 37 L.Ed.2d 596].

The intervention of an impartial magistrate between the uncontrolled discretion of police officers and the citizens they are sworn to serve is always to be preferred. Solid judicial precedent has, however, mitigated the inflexible warrant requirement as to automobile searches. In the circumstances of the case before us today we hold that the warrantless search of Hill's automobile comported with the Fourth Amendment. *See* United States v. Maspero, 496 F.2d 1354 (5th Cir. 1974); United States v. Davis, 496 F.2d 1026 (5th Cir. 1974); United States v. Frick, 490 F.2d 666 (5th Cir. 1973).

## III.

### *The Sentence*

█ After he found Hill guilty as charged in the indictment, the district judge sentenced the defendant to a term of 8 years in the federal penitentiary to be followed by a special 3-year term of parole. In addition, he ordered the defendant to pay a fine of 15,000 dollars or stand committed. Hill contends that because he is indigent, the fine denies him equal protection of the law. This sentence lay well within the maximum prescribed by 21 U.S.C. § 841(b)(1)(A), which authorized imprisonment for up to 15 years and a fine of not more than 25,000 dollars. In Williams v. Illinois, 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970), the Supreme Court held "that a state may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine. A statute permitting a sentence of both imprisonment and fine cannot be parlayed into a longer term of imprisonment than is fixed by the statute . . . ." In Tate v. Short, 401 U.S. 395, 398, 91 S.Ct. 668, 671, 28 L.Ed.2d 130 (1971), the Court adopted the view, previously expressed by four of its members in Morris v. Schoonfield, 399 U.S. 508, 509, 90 S.Ct. 2232, 2233, 26 L.Ed.2d 773 (1970), that "the Constitution prohibits the State from imposing a fine as a sentence and then automatically converting it into a jail term solely because the defendant is indigent and cannot forthwith pay the fine in full." It also emphasized, however, that there is no constitutional infirmity in imprisoning "a defendant with the means to pay a fine who refuses or neglects to do so." 401 U.S. at 400, 91 S.Ct. at 672.

Neither Hill nor his counsel entered any objection when the district court imposed sentence. The present record is devoid of any evidence of Hill's indigency; indeed indigency is contraindicated by the fact that almost 18,000 dollars in cash was recovered at his residence. Nothing establishes that the sentence and fine imposed now offend the Equal Protection Clause. The defendant may petition the district court under Fed.R. Crim.P. 35 for correction or reduction of sentence at such time as he can demonstrate that his fiscal inability to pay the fine assessed is causing him to suffer a deprivation of liberty. Should the government resort to alternatives other than incarceration to enforce its interest in the payment of fines, Hill may raise his equal protection rights there also. *See* Tate v. Short, *supra*, 401 U.S. at 399, 91 S.Ct. at 671.

The decision of the district court is Affirmed.