**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Clarence HILL and Julius Wilkerson a/k/a Moon, and Clarence Diggs, Defendants-Appellants.**

No. 74–2028.

United States Court of Appeals, Fifth Circuit.

Feb. 19, 1975.
Rehearing and Rehearing En Banc Denied April 1, 1975.

A. J. McNamara, Metairie, La. (Court-appointed), for Hill.

Michael F. Barry, New Orleans, La., for Wilkerson.

Salvadore T. Mule, New Orleans, La. (Court-appointed), for Diggs.

Gerald J. Gallinghouse, U. S. Atty., Cornelius R. Heusel, Mary Williams Cazalas, Asst. U. S. Attys., Billy B. Bowman, Sp. Atty., Drug Enforce. Adm., Task Force Div., New Orleans, La., for plaintiff-appellee.

Before GEWIN and SIMPSON, Circuit Judges, and NICHOLS,* Associate Judge.

NICHOLS, Associate Judge:

A jury convicted the appellant-defendants, Clarence Hill, Julius Wilkerson (a/k/a Moon), and Clarence Diggs of conspiracy to possess heroin with intent to distribute, and to distribute heroin, a Schedule I narcotic drug controlled substance, in violation of 21 U.S.C. § 841(a)(1). Diggs, a multiple offender, received a 21-year sentence with a special parole term of 6 years (pursuant to 21 U.S.C. § 841). Wilkerson and Hill received 12-year sentences with special parole terms of 3 years, Hill's sentence to run concurrently with his 8-year sentence in a companion case reported at United States v. Hill, 500 F.2d 315 (5th Cir. 1974), in which Hill was convicted of possession with intent to distribute the identical heroin which forms the basis of the conspiracy in this case. We affirm.

I

The relevant facts before the jury were as follows. On October 24, 1971, Wilkerson sent a telegraphic money order for $1,350 to Diggs' home in New York City. In the last week of February 1972, unindicted co-conspirators Barbara Smith and Joyce Picard made a round-trip to New York City from New Orleans during which Barbara Smith picked up at Diggs' New York home a sizeable package of heroin and couriered it back to New Orleans. Upon her return to New Orleans, she exchanged the package with Hill for $300, the agreed wages for the trip.

The next day Hill, Wilkerson, Diggs, Picard and another unindicted co-conspirator, Cora Virgil, returned to Barbara Smith's home with the heroin, and various packaging materials, and spent several hours repacking 40 bundles of heroin into 2,000 little glassine envelopes. The rest of the heroin was left hidden in the Smith home. A week later, Hill and Wilkerson returned and again repacked another 40 bundles into 2,000 glassine envelopes in the Smith home. The following week, the remaining 20 bundles were repacked by Hill and Wilkerson. When they left the Smith home on this occasion, they also took the surplus wrapping materials.

About 3 months later, in the search and seizure involving Hill's home and automobile on July 1, 1972, another 42 bundles of heroin were turned over to police by Hill and other members of his family, along with $17,991 in cash and a gun.

The search and seizure issues, raised by appellants regarding Hill's home and automobile, were heard and decided in the appeal of Hill's companion conviction, 500 F.2d 315 (5th Cir. 1974), in an opinion by Judge Clark which disposes of all the search and seizure issues raised here, except one discussed *infra*. We are

---

* Of the U. S. Court of Claims, sitting by designation.

invited by parties other than Hill to reconsider these holdings, but we see no reason to doubt their correctness, and we reaffirm them here.

## II

■ Appellants also argue on appeal their motion for mistrial based on four separate remarks of the prosecutor, Mr. Bowman, in his closing argument. They allege that these remarks were impermissable comments on the defendants' failure to take the stand in their own behalf. However, three of the four remarks could only have been understood as comments on the failure of the *defense* (as opposed to *defendants*) to counter or explain the testimony of the unindicted co-conspirators, the various police officials, and the prosecution's other witnesses and exhibits, putting a mass of incriminating evidence before the jury. None of these three remarks specifically pointed to any or all of the defendants as not having testified. Indeed, we can find no specific reference to defendants' failure to take the stand during the trial in the record. The judge told the jury that the defendants did not have to testify and need not offer evidence. We disapprove of any comments by prosecutor or judge that even indirectly invites the jury's attention to the failure of the defendants to take the stand, but on the facts of this case we cannot say that the trial judge abused his discretion in not noticing that any improper comments were made. None of the statements are comparable to the prejudicial remarks and instructions that resulted in reversal of trial convictions in Fontaine v. California, 390 U.S. 593, 88 S.Ct. 1229, 20 L.Ed.2d 154 (1968), and in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ The fourth remark occurred in the opening words of the prosecutor's statement, as he congratulated and complimented the jury on their patience, and attention to the various surroundings and events associated with the three-day trial. He said they "watched attentively, listened to the witnesses, observed the witnesses' demeanor, observed the defendants' demeanor * * *" To invite attention to the "demeanor" of a defendant who has not taken the stand is anomalous and could be impermissably prejudicial in some circumstances. There is no showing of any such prejudice here, and the remark was no doubt taken as manifestly it was intended, as meaningless flattery to the jury upon its alert attention to all that happened before it. We will not be understood as prospectively endorsing such a remark for use in future cases: clearly it is contra-indicated.

## III

■ Appellants return to the search and seizure to complain about the ruse used by the Federal agent to get Hill to open his door peacefully to them, at which time the agents disclosed their true identities and search warrant. He carried an attache case similar to those carried by insurance salesmen. He knocked and a voice inside asked who it was. He replied, "Aetna Insurance." Hill then unlocked a wooden door and the agent said: "Federal agents with a warrant." We see no significance if the agent pulled open an unlocked screen door before knocking. Commonly one must do that to knock or ring, if a screen door is fitted in front of a solid door. This does not make a forceful entry out of one otherwise peaceful. In United States v. Beale, 5 Cir., 436 F.2d 573, rev'd on rehearing, 5 Cir., 445 F.2d 977 (1971), cert. denied, 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972), this court has previously struggled with the ruse problem, concluding that "if entry by deception and wholly without application of force is to be brought within § 3109, it should be by the Supreme Court." (445 F.2d at 978). We think that our prior holding in *Beale* controls the instant case, particularly since here full disclosure of identity and warrant was made as soon as Hill opened the door and before entry by the officers.

Appellant Wilkerson has also urged many other assignments of error, but

after careful consideration we find no merit in them, sufficient to require discussion.

Affirmed.