UNITED STATES of America, Plaintiff,

v.

Lemmie Daniel COLEMAN et al., Defendants.

No. CR–76–186 WHO.

United States District Court,
N. D. California.

Aug. 10, 1976.

**632**

James L. Browning, Jr., U. S. Atty., John C. Gibbons, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

Edward J. Nevin, Nevin & Nevin, San Francisco, Cal., for Lemmie Coleman.

Jerrold Ladar, San Francisco, Cal., for Jimmy Jones.

Penelope M. Cooper, Cooper, Newhouse, Hertz & Lyons, Berkeley, Cal., for Brenda Coleman.

## OPINION AND ORDER

ORRICK, District Judge.

Defendants, Lemmie Daniel Coleman (Coleman), Jimmy Jones (Jones), and Brenda Clarrete Coleman (Brenda Coleman), have been charged with violations of the United States Code in a three-count indictment returned on March 31, 1976. Counts I and II charge defendants Coleman and Jones with the unlawful distribution of heroin on two separate occasions in violation of 21 U.S.C. § 841(a)(1). In Count III, defendants Coleman and Brenda Coleman are charged with the unlawful possession of approximately 826 grams of heroin with the intent to distribute the same also in violation of 21 U.S.C. § 841(a)(1).

Pursuant to Rule 41(f) of the Federal Rules of Criminal Procedure, the defendants moved this Court for an order suppressing the evidence which underlies the charge in Count III of the indictment. This evidence, including the quantity of heroin referred to in Count III, was seized by federal agents at 445—43rd Street, Oakland, California, on March 25, 1976, upon the execution of a search warrant issued on the same day. The defendants contend that the seizure was illegal on several grounds. First, they assert that the search warrant was defective because it was not supported by probable cause and was overly broad. Second, they allege that the warrant was improperly executed because the federal agents failed to announce their authority and purpose before forcibly entering the premises. Third, they argue that the failure to obtain an arrest warrant for the arrest of Coleman in his residence makes the entry and arrest unlawful and requires suppression of the evidence. Finally, Brenda Coleman moves for the suppression of certain statements she allegedly made to the federal agents after her arrest on March 25, 1976, on the grounds that she was not advised of her constitutional rights prior to making the statements.

Defendants' motions came on for hearing on May 27, 1976. Having considered the memoranda, affidavits, exhibits on file, and the testimony and oral arguments presented, the Court finds that the search warrant was proper and that it was lawfully executed. Moreover, the Court finds that Brenda Coleman was advised of her rights in accordance with the mandate of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1965), prior to her making any statements. Accordingly, the motions to suppress are denied.[1]

## I   THE VALIDITY OF THE SEARCH WARRANT

### A

The defendants' primary attack is directed at the sufficiency of the affidavit supporting the search warrant which issued on March 25, 1976. The affidavit, submitted by Special Agent David Samuel of the Drug Enforcement Administration (DEA), sets forth the following facts:

On March 23, 1976, at approximately 8:45 p. m., Special Agent Silas Brandon had a telephone conversation with Jones wherein they negotiated the purchase of an amount of heroin. Both parties agreed to meet

---

1. Given the validity of the search warrant, the Court need not reach the issue of whether the arrest of Coleman within his residence without a warrant was unlawful.

within a few minutes at a Safeway Store located at High Street and 580 Freeway in Oakland. At approximately 9:10 p. m. on the same date DEA agents observed defendants Coleman and Jones leave a residence at 2248—41st Avenue in Oakland together, enter separate vehicles, and drive to the Safeway Store. Jones entered the parking lot and met Special Agent Brandon. He told the Agent he would have to go and get the three ounces of heroin and meet him at a MacDonalds restaurant on Telegraph Avenue in Oakland in fifteen to twenty minutes. At the same time Coleman was observed to drive to a Quick Stop Store on Harrison Street in Oakland while Jones was negotiating with Special Agent Brandon. At approximately 9:20 p. m. Jones left the presence of Special Agent Brandon and met Coleman at the same Quick Stop Store. Both Coleman and Jones were then followed to 445—43rd Street in Oakland. At 9:25 p. m. DEA agents observed both Coleman and Jones enter the 43rd Street residence. At 9:30 p. m. Jones exited the residence and took a circuitous route to the aforesaid MacDonalds restaurant, arriving at approximately 9:35 p. m. At approximately 9:45 p. m. Special Agent Brandon arrived at the MacDonalds restaurant and met with Jones. At 9:50 p. m. Jones delivered approximately three ounces of heroin to Special Agent Brandon. Jones then left the MacDonalds restaurant and drove directly to 445—43rd Street in Oakland, entered the residence, was observed with Coleman, and then both men left the residence in separate vehicles.

Paragraph 9 of the affidavit reveals that prior to March 25, 1976, Special Agent Samuel had received information from an undisclosed informant relating that on previous occasions from 1973 through 1975 he had personally picked up heroin for Coleman on numerous occasions and that on some of those occasions the heroin was concealed in automobile tires and ultimately delivered to Coleman at diverse residences in the Oakland area.

Paragraph 10 of the affidavit indicates that on March 25, 1976, at approximately 9:40 a. m., DEA agents observed an automobile parked in front of the residence at 445—43rd Street in Oakland. At approximately 10:00 a. m. Coleman was observed to arrive at the residence, have a conversation with an unidentified man, and enter the residence. At 10:35 a. m. both men exited the residence, took a tire out of the trunk of the automobile parked in front of the residence, and took it into the residence's garage. At 10:50 a. m. both men exited the garage and left the area.

Finally, Special Agent Samuel indicates that he checked the utilities at 445—43rd Street in Oakland and found them to be listed in the name of Brenda Cole. In addition, Coleman was observed at the residence every day from March 15, 1976, through March 25, 1976. Also, on March 15, 1976, agents of the DEA observed Coleman and Brenda Coleman moving cardboard boxes into the residence.

### B

The crucial issue before this Court is whether the affidavit contains sufficient facts to support the magistrate's finding of probable cause to believe that there was heroin and other evidence of criminal activity in the 43rd Street residence on March 25, 1976. *See, United States v. Brown,* 455 F.2d 1201, 1204 (9th Cir. 1972), *cert. denied,* 406 U.S. 960, 92 S.Ct. 2069, 32 L.Ed.2d 347 (1972). In making this determination, the Court may consider only the information which was before the magistrate. *Aguilar v. Texas,* 378 U.S. 108, 109 n. 1, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Thus, the warrant here must stand or fall on the contents of the affidavit. *United States v. Melvin,* 419 F.2d 136, 140 (4th Cir. 1969).

Probable cause exists where the facts and circumstances within the affiant's knowledge, based on reasonably trustworthy information, are sufficient to warrant a man of reasonable caution to believe that an offense has been or is being committed or that evidence thereof is on the premises to be searched. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed.

1879 (1948); 8A J. Moore, *Federal Practice* ¶ 41.04[2] (2d ed. 1975).

■ The affidavit may be based in whole or in part on hearsay information, at least where the affidavit gives some indication of the underlying circumstances which support an informant's conclusions and which demonstrate that the informant is reliable and that his information is credible. *Aguilar v. Texas, supra; United States v. Brown, supra.*

■ The purpose of the "underlying circumstances" requirement is to insure that the magistrate is able to make an independent determination of probable cause and does not simply rubber stamp the conclusions of the affiant. *United States v. Townsend,* 394 F.Supp. 736, 741 (E.D.Mich. 1975). However, an affidavit must be interpreted in a "common-sense" fashion, not in a hypertechnical manner; and in a close case, any doubt is to be resolved in favor of upholding the warrant in order to encourage resort to orderly legal processes. *United States v. Ventresca,* 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1964); *United States v. Wong,* 470 F.2d 129 (9th Cir. 1972); *United States v. Townsend, supra,* 394 F.Supp. at 741.

It appears to the Court that this is indeed a close case. Here, the affidavit contains information derived from an informant's tip as well as independent information gathered through surveillance conducted by federal law enforcement officers. The defendants assert that the information contained in the informant's tip must be disregarded because the affidavit furnishes no indicia of the credibility of the unnamed informant. They further argue that the information supplied by the informant is stale. In addition, the defendants contend that the information obtained through surveillance fails to provide a sufficient nexus between the premises searched and any illegal activity or evidence thereof. However, for the reasons hereinafter stated, the Court rejects defendants' arguments and finds that the warrant is based upon a proper showing of probable cause.

C

The Court recognizes that the affidavit is flawed by the failure of the affiant to include any information by which the reliability of the informant mentioned in paragraph 9 may be tested. There is not even the bare conclusion that the confidential informant, whose identity was not disclosed in deference to a fear of possible reprisal, is "reliable" or "trustworthy".

■ The two-pronged test of *Aguilar v. Texas, supra,* provides the standard for determining the sufficiency of an affidavit when law enforcement officers are acting on an informant's tip. The magistrate must be informed of the underlying circumstances (1) from which the informant reached his conclusion about illegal activity or evidence thereof in a given location, and (2) from which the affiant determined that the informant was credible or his information reliable. *Spinelli v. United States,* 393 U.S. 410 at 413, 89 S.Ct. 584, 21 L.Ed.2d 637; *United States v. Hill,* 500 F.2d 315 (5th Cir. 1974), *cert. denied,* 420 U.S. 931, 95 S.Ct. 1135, 43 L.Ed.2d 404 (1975).

■ However, even if the hearsay supplied by the informant, taken by itself, fails to meet the second prong of the *Aguilar* test, as I hold it does here, the tip may yet enter into the probable cause calculus if other averments in the affidavit sufficiently corroborate the tip so that it can fairly be said that the tip as corroborated is as trustworthy as a tip which would pass the two-pronged *Aguilar* test without independent corroboration. *Spinelli v. United States, supra,* 393 U.S. at 415–416, 89 S.Ct. 584; *United States v. Hill, supra. United States v. Karathanos,* 531 F.2d 26 (2d Cir. 1976), where the tip failed the first prong of the *Aguilar* test is inapposite.

■ Here, there is a basis for crediting the hearsay of the informant in that he related information gained from direct personal activity and observation, and his admissions of involvement in a criminal scheme were declarations against penal interest. *United States v. Harris,* 403 U.S.

573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Armour v. Salisbury,* 492 F.2d 1032 (6th Cir. 1974); *United States v. Hill, supra,* 500 F.2d at 318–319; *United States v. Townsend, supra,* 394 F.Supp. at 742–743. The reliability of the tip is established by the declaration against interest, as well as the corroboration supplied by surveillance indicating a sale of heroin from the 43rd Street house on March 23 and the delivery of the tire on March 25. *United States v. Townsend, supra,* 394 F.Supp. at 742–743. Given the surveillance of the March 23 heroin sale, this is not a case where the only corroboration is the observation of innocent-appearing activity. *See, United States v. Larkin,* 510 F.2d 13 (9th Cir. 1974).

The Court notes that the continued vitality of the strict *Aguilar-Spinelli* rule has been questioned after *Harris. See,* 8A J. Moore, *Federal Practice* ¶ 41.04[3] at 41–28, 41–29. It has been suggested that *Harris* relaxed the standard for judging the reliability of an informant's tip. *See, United States v. McNally,* 473 F.2d 934, 938–939 (3d Cir. 1973).

However, the Court need not reach this issue since it finds that the tip, as corroborated, meets the *Aguilar-Spinelli* test.

▮ The Court also rejects the defendants' contention that the informant's tip should be disregarded because it is "stale". *See, United States v. Boyd,* 422 F.2d 791 (6th Cir. 1970). Although the informant related information concerning dealings in the past, the tip did establish a continuing course of conduct of heroin dealings from 1973 to 1975. In such a situation, the more recent observations of the March 23 sale and the March 25 tire delivery vitiate the remoteness of the prior acts. *See, Mapp v. Warden,* 531 F.2d 1167 (2d Cir. 1976); *United States v. Townsend, supra,* 394 F.Supp. at 744–745.

▮ Although the corroboration of the informant's tip could certainly have been more detailed, the Court is satisfied that even without the information supplied by the informant there is sufficient independent evidence contained in the affidavit to support a finding of probable cause to search the 43rd Street house on March 25, 1976. *See, United States v. McNally, supra.* The affidavit sets forth in considerable detail the facts and circumstances of a hand-to-hand sale of heroin by defendant Jones to a federal agent on March 23, 1976. During this transaction Jones met with a federal agent to negotiate a heroin sale. Jones purportedly stated at the meeting that he would leave and go get three ounces of heroin. Thereafter, Jones departed, met briefly with Coleman at a store and then went to the residence at 445—43rd Street. Coleman, in a separate vehicle, also arrived at the 43rd Street residence. Both men entered the house. Five minutes later Jones left the residence and drove in a circuitous route to a spot where he had previously agreed to sell the heroin to the agent. Immediately after the delivery of the heroin, Jones returned to the 43rd Street residence and remained several minutes, during which time he was seen with Coleman. Both men were later seen departing from the house.

The Court finds that these facts establish a sufficient nexus between an unlawful sale of heroin and the 43rd Street residence so as to support a determination of probable cause to believe that there was heroin within in the house at the time of the search two days later.

The defendants contend that at most the facts alleged support a mere *possibility* that the heroin was in the residence subject to the search warrant. They argue that it was just as likely that the heroin sold by Jones on March 23 could have been stored at the 41st Avenue house or the Quick Stop Store. The defendants claim that the facts alleged are not sufficient to focus suspicion on the 43rd Street residence and they contend that the failure of the government to more precisely tie down the location of the heroin cache is a fatal defect invalidating the search.

However, the Court finds that there is reasonable cause to believe that there was heroin at the 43rd Street residence. As noted, Jones went there immediately prior

to his hand-to-hand delivery of heroin to an agent, and he returned to that address immediately thereafter. If, as the defendants speculate, Jones might have taken the heroin with him from the 41st Street residence or the Quick Stop Store, there would have been no need to go to the 43rd Street house immediately prior to the delivery. Moreover, Coleman, who was seen at the scene of the negotiations, was seen continuously at the 43rd Street residence for some ten days.

A magistrate, in assessing probable cause, may draw inference from the facts. He deals in probabilities, not in certainties or even near certainties. *United States v. Townsend, supra.* Moreover, the magistrate's determination should be given great deference. *United States v. Melancon,* 462 F.2d 82 (5th Cir. 1972), *cert. denied,* 409 U.S. 1038, 93 S.Ct. 516, 34 L.Ed.2d 487 (1973). Here, the affidavit, read in a common-sense way, is sufficient. *See United States v. Desist,* 384 F.2d 889 (2nd Cir. 1967), *aff'd,* 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1968).

On similar facts, the Fifth Circuit upheld a finding of probable cause in *United States v. Finstad,* 478 F.2d 840 (5th Cir. 1973). In that case, a special agent called an individual from whom he had been purchasing heroin and the seller stated that he could call back as soon as he had received some of the drug. About thirty minutes later the agent observed defendant, Finstad, drive up to the seller's residence and meet with the seller at the rear of a car with an open trunk. The seller was then followed to a motel where he transacted a sale of heroin and was arrested. The seller admitted that the heroin had been supplied by Finstad. The Court upheld a determination of probable cause to arrest Finstad in his home. While in this case there is no admission by the seller, Jones, the surveillance of Jones and Coleman support a finding of a connection between them in regard to heroin dealing.

Finally, the defendants insist that the search warrant authorized an overly broad search. They suggest that the war-

rant should have been limited to a search of the garage at the 43rd Street residence, not the entire house. This contention is without merit. It was certainly reasonable to believe that there was heroin stashed in the house, given Jones' entry and exit from the residence and inability of the agents to determine from surveillance that there was no access from the garage to the interior of the residence. *See, United States v. Wong, supra.*

## II  EXECUTION OF THE SEARCH WARRANT

The defendants also assert that the federal agents who executed the search warrant violated the provisions of 18 U.S.C. § 3109 by failing to give proper notice of their authority and purpose and allowing time for the defendants within to open the door before making forcible entry into the residence.

The evidence adduced at the hearing indicates that Special Agent Patrick Clark opened the outer screen door of the house and knocked loudly on the inner wooden door. After knocking, Clark shouted, "Federal agents with a search warrant—open the door." The evidence further indicates that Clark waited a short time, then knocked again and shouted "federal agents" before he and another agent forced open the door.

It was conceded by the federal agents that entry was also made through the back door of the residence. The Court finds that this entry was also forcible. However, the evidence at the hearing established that the agents at the back door did not enter the residence until Agent Clark and others entered the front door.

Accordingly, the Court finds that the agents complied with 18 U.S.C. § 3109 in executing the warrant. *See, United States v. Wysong,* 528 F.2d 345, 348 (9th Cir. 1976); *United States v. Phelps,* 490 F.2d 644 (9th Cir. 1974), *cert. denied,* 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974); *United States v. Allende,* 486 F.2d 1351 (9th Cir. 1973).

## III THE STATEMENTS OF DEFENDANT BRENDA CLARRETE COLEMAN

 The testimony of Brenda Coleman at the hearing contradicted her affidavit and indicated that she was advised of her rights by the federal agents prior to her making the statements at issue. The Court finds that defendant Brenda Coleman was advised of her rights in accordance with *Miranda v. Arizona, supra,* at least once when she was outside of the house preparing to enter a vehicle. Thus, her motion to suppress based on the failure of the agents to advise her of her constitutional rights is denied.

## IV THE VALIDITY OF THE ARREST OF LEMMIE COLEMAN

Finally, the defendants argue that the failure of the agents to obtain an arrest warrant for Coleman prior to making an arrest within his residence invalidates the entry into the house.

The necessity of obtaining an arrest warrant prior to making an arrest within a residence absent exigent circumstances is a point upon which the Supreme Court has not definitively ruled. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) (concurring opinions, Stewart and Powell, JJ.); *United States v. Santana,* 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (dissenting opinion, Marshall, J.).

The Court is aware that the California Supreme Court recently held that a warrantless arrest within the home violates the Fourth Amendment in the absence of exigent circumstances. *People v. Ramey,* 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976).

 The government here has suggested that exigent circumstances may have existed in the instant case. However, the Court need not reach this issue. Given the validity of the search warrant, the items seized within the house would be admissible in evidence even if the subsequent arrest of Coleman were unlawful.

Accordingly, IT IS HEREBY ORDERED that the defendants' motions to suppress are DENIED.