**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ricardo CHAVEZ et al., Defendants-
Appellants.**

**No. 72-3726.**

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1973.

John L. Fashing, El Paso, Tex., on appeal for defendants-appellants.

Victor Arditti, El Paso, Tex., (Court-appointed) for Chavez.

Paul C. Moreno, El Paso, Tex., (Court-appointed) for Barraza-Acevedo.

Larry Victorson, El Paso, Tex., (Court-appointed) for Campos.

Joseph A. Calamia (Court-appointed), John L. Fashing, El Paso, Tex., for Escobedo.

William S. Sessions, U. S. Atty., San Antonio, Tex., Edward S. Marquez, El Paso, Tex., Asst. U. S. Atty., for plaintiff-appellee.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

This case concerns the sufficiency of an affidavit to support the issuance of a search warrant. The four defendants were convicted of possessing, with intent to distribute, marijuana, a schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Customs agents found 526 pounds of marijuana during a search of defendant Jose Barraza-Acevedo's residence. The four defendants rest their appeal primarily on the ground that the affidavit on which the warrant authorizing this search was based was insufficient to show probable cause to search defendant Barraza-Acevedo's home. We agree that the affidavit was insufficient, and accordingly we reverse the convictions of the four defendants.

Some time on or before July 27, 1972, Agent Herbert P. Hailes of the U. S. Customs Agency had a conversation with a confidential informant which led him to place Barraza-Acevedo's residence at 7501 Acapulco Avenue in El Paso, Texas, under surveillance. On July 28, Agent Hailes obtained a warrant from a federal magistrate to search the premises at that address. This warrant was never executed, and was returned three days after it was issued. On the day following its return, August 1, Hailes had a second conversation with the informant. After this conversation, the federal agents sought and were issued a second search warrant for Barraza-Acevedo's residence. The affidavit for this warrant was sworn to by Special Agent Phillip DeHoyos of the Cus-

toms Agency. It alleged grounds for believing there was cause to search as follows:

> Information received from a confidential source of proven reliability. The source of the information, stated below, previously has furnished information on four occasions and pursuant to the information furnished by the source, large quantities of Schedule I controlled substances were seized by law enforcement officers. As a result of the information furnished by the source on the previous occasions mentioned above, warrants of arrest for six defendants were issued by competent courts of jurisdiction. The source of the information, stated below, is familiar with traffickers in controlled substances within the El Paso area. The source of information has informed the affiant that a large quantity of a Schedule I controlled substance, namely marijuana, will be moved from the premises of 7507 Acapulco Avenue, El Paso, Texas, within the next twenty-four hours.

After the second warrant was issued, the agents placed the house under renewed surveillance. Then, at about 2:30 p. m. that same day, Hailes and De-Hoyos, accompanied by at least seven other customs agents, went to 7507 Acapulco to execute the warrant. When the agents entered the house, they found five men—Ricardo Chavez, Ricardo Escobedo, Jose Barraza-Acevedo, Ignacio Campos, and Manuel Reyes—in the living room of the home.[1] They found 224 bricks of marijuana in the kitchen, two bricks in a storage room, and four more in a bedroom. In the course of their search they discovered and seized a number of other incriminating items later introduced into evidence at the trial. These included two fully loaded pistols and a fully loaded revolver, two marijuana roaches and one marijuana cigarette, a crumpled dollar bill in which a quarter gram of cocaine was wrapped, some cigarette wrapping paper, and a weighing scale.

After their indictment each of the five defendants filed a motion to suppress the evidence seized during the August 1 search. The trial judge denied these motions. The case was tried on Thursday, October 26. On October 30, the jury, after a day and a half of deliberation, returned with verdicts of guilty for the four defendants who are appealing here. The jury reported that it could not reach a verdict on the fifth defendant, Manuel Reyes. The four convicted defendants were sentenced on November 29.

The sole issue we need decide on this appeal is the sufficiency of Agent De-Hoyos' affidavit. In a similar case, Chief Justice Burger has described the issue as "the recurring question of what showing is constitutionally necessary to satisfy a magistrate that there is a substantial basis for crediting the report of an informant known to the police, but not identified to the magistrate," United States v. Harris, 1971, 403 U.S. 573, 575, 91 S.Ct. 2075, 2078, 29 L.Ed.2d 723, 729 (Burger, C. J., announcing judgment of the Court). To decide this case we look to three cases in which that "recurring question" was presented to the United States Supreme Court in the last decade.

Aguilar v. Texas, 1964, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, is the first and most important of the three decisions. The affidavit in that case had recited merely that "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates, and other narcotics . . . are being kept at

---

1. Chavez, Barraza-Acevedo, Escobedo, and Campos are the four appellants here. Reyes is not a party to this appeal, because the jury was unable to reach a verdict as to him, and he was therefore not convicted of any offense. A sixth man, Raul Salas, was found in the house at the time of the search. Salas was not with the defendants in the living room, but rather was found in the kitchen. Salas was not indicted by the grand jury which indicted the other five men on September 11, 1972, and he was not brought to trial with them.

the above described premises." 378 U.S. at 109, 84 S.Ct. at 1511. In holding this affidavit insufficient to support a magistrate's finding probable cause, the Court established what has become the basic standard for determining when a search warrant may issue on information received from a confidential informer. The Court said:

> [T]he magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, *and* some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citations omitted], was 'credible' or his information 'reliable'.

378 U.S. at 114, 84 S.Ct. at 1514.

■ This test is typically referred to as *"Aguilar's* two-pronged test." Spinelli v. United States, 1969, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 642. See United States v. Mendoza, 5 Cir. 1970, 433 F.2d 891; Gonzalez v. Beto, 5 Cir. 1970, 425 F.2d 963; United States v. Marihart, 8 Cir. 1972, 472 F.2d 809, 811; Note, The Supreme Court— 1970 Term, 85 Harv.L.Rev. 40, 55 (1971). The first "prong" requires that the affidavit disclose *particular* facts or circumstances which justify concluding that the informant is a reliable or trustworthy person. The second requires specific facts or circumstances tending to demonstrate that the informant, in the instance in question, had gathered his information in a reliable manner. The theory underlying these twin requirements is that they are dictated by the long-standing principle that determinations of probable cause are to be made by "neutral and detached magistrate[s]," rather than by "officer[s] engaged in the often competitive enterprise of ferreting out crime." Johnson

v. United States, 1948, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 2 L.Ed. 436, 440.[2] If a magistrate accepted an affidavit which did not meet the first prong of the test, the theory went, he would abandon to the officer his constitutional function of making an independent determination; for his determination would then be entirely dependent upon the officer's judgment of the informant's credibility. Similarly, if he accepted an affidavit not meeting the second prong, he would abandon his function to the informant; then his determination would depend entirely upon the informant's judgment about the facts of the case. See Aguilar v. Texas, 1964, 378 U.S. 108, 114–115, 84 S.Ct. 1509, 12 L.Ed.2d 723; United States v. Harris, 403 U.S. 573, 590–591, 91 S.Ct. 2075, 2084, 29 L.Ed.2d 723, 738 (Harlan, J., dissenting).

This test was reaffirmed five years after *Aguilar* in Spinelli v. United States, 1969, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. *Spinelli* involved the reversal of a conviction for travelling interstate with the intention of conducting gambling activities which violated state law. The description of the informant's tip was a bald statement that a confidential informant had told police that gambling paraphernalia would be found in the premises to be searched. That statement was of course no more detailed or illuminating than the one held inadequate in *Aguilar*. But the affidavit had detailed other supposedly corroborating information gathered by the independent investigative efforts of the police. The Court ruled that the tip, though in itself insufficient under *Aguilar* to constitute probable cause, might be assessed along with other allegations in the affidavit in evaluating the magistrate's finding. But it held that in the case before it there was nothing in the other parts of the application "which would permit the suspicions engendered

2. See *Spinelli*, 393 U.S. at 415, 89 S.Ct. 584, 21 L.Ed.2d 637; *Aguilar*, 378 U.S. at 110–111, 84 S.Ct. 1509, 12 L.Ed.2d 723. See also Byars v. United States, 1929, 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Giordenello v. United States, 1957, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503, 1509; United States v. Lefkowitz, 1931, 285 U.S. 452, 464, 52 S.Ct. 420, 423, 76 L.Ed. 877, 882.

by the informant's report to ripen into a judgment that a crime was probably being committed," 393 U.S. at 418, 89 S.Ct. at 590, and so struck down the defendant's conviction. The aspect of *Spinelli* most significant for our purposes is the stress it laid on the second prong of the *Aguilar* test, the requirement of details concerning the way the informant gathers his information. Justice Harlan's opinion for the Court suggested that this prong was if anything more important than the first. Justice Harlan repeatedly emphasized the need for the affidavit to provide either "a statement detailing the manner in which the information was gathered," or, failing that, a "descri[ption of] the accused's criminal activity in sufficient detail that the magistrate may know he is relying [upon] something more substantial than a casual rumor circulating in the underworld." 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed. at 643–644.

The final case in the trilogy is United States v. Harris, 1971, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. In *Harris* the Supreme Court upheld the validity of the search. The affidavit related that a confidential informant whom the affiant regarded as "prudent"

had reported that over a period of two years, and most recently within the two weeks preceding the time of the affidavit, he had purchased illicit whiskey at the premises to be searched, and that he had personal knowledge that liquor on which taxes were not paid was kept there. In *Harris* it was apparent that the allegations of the informant's purchases and of his personal knowledge sufficed to meet the requirements of the second prong of the *Aguilar* test. The difficulty was whether the first prong, the requirement of details supporting a conclusion that the informant was credible, was met. The Court found that it was, on the basis of a cumulation of four different circumstances. These were: (1) the allegation of the affiant that he regarded the informant as "prudent"; (2) the detail provided in the tip; (3) the fact that the affidavit also alleged that the accused had a reputation for being a trafficker in nontaxpaid liquor; and (4) the fact that the information given, with the allegations of the informant's purchases, was a declaration against the informant's penal interest.

■ Given the doctrines inherited from this line of cases,[3] it takes little

---

3. The American Law Institute's Model Code of Pre-Arraignment Procedures, Off. Draft No. 1 (1972) states the test as follows:
Section 201 *"Contents of Application.* The application shall describe with particularity the individuals or places to be searched and the individuals or things to be seized, and shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that such individuals or things are in the places, or the things are in possession of the individuals, to be searched. If an affidavit is based in whole or in part on hearsay, the affiant shall set forth particular facts bearing on the informant's reliability and shall disclose, as far as practicable, the means by which the information was obtained." The explanatory note to this sub-section points out: "In Subsection (3) the word 'particular' has been added to qualify 'facts' and 'practicable' has been substituted for 'possible.' The second sentence embodies special requirements of particu-

larity with respect to hearsay affidavits, in line with such decisions as Aguilar v. United States, 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723] (1964) and Spinelli v. United States, 393 U.S. 410 [89 S.Ct. 584, 21 L.Ed.2d 637] (1969)." The Commentary explains: "The *Byars* case and others in its wake have indicated the Court's disapproval of conclusory statements in the affidavits. The question of probable cause *vel non* must be decided on the basis of what is put before the magistrate, and he must be given enough to make up his own mind, and not have to rely on the applicant's judgment. Hearsay evidence which would not be admissible in evidence at the trial may be considered, but in that event the affiant must set forth the grounds for treating the hearsay as credible. ¶ It is around the matter of hearsay leads or tips from 'informers' that the Court has recently been divided. From the opinions one may gather at least two *desiderata*: (1) that the affiant state the grounds for his belief that the informer is reliable, and

strain to see why the affidavit in this case is insufficient. For the affidavit here offers virtually nothing which might meet the second prong of the *Aguilar* test: it, like the affidavit in *Spinelli*, utterly "fail[s] to set forth any of the 'underlying circumstances' necessary to enable the magistrate independently to judge of the validity of the informant's conclusions." 393 U.S. at 413, 89 S.Ct. at 587. The only two items in the affidavit which even may be called specific details—the allegation that the informant had given fruitful information before, and the allegation that he was "familiar" with El Paso narcotics traffickers—both appear to be addressed only to the question of the informant's personal reliability; neither in any way answers questions about the way the informant acquired the particular information he related to the agents. Nor do we find in this affidavit a description of criminal activity with anything approaching the detail *Spinelli* and *Harris* suggest might suffice to meet *Aguilar's* second requirement. The only detail related is that the marijuana was to be moved within 24 hours. That can hardly be said to fit under the language in *Spinelli* calling for "sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld," 393 U.S. at 416, 89 S.Ct. at 589, 21 L.Ed. at 643–644. Thus the conclusion appears inescapable to us that Officer DeHoyos' affidavit did not meet the second prong of the *Aguilar* test.[4]

Reversed.

(2) that the affiant indicate how the informer acquired his knowledge. The last sentence of Section (3) embodies those criteria."

4. The appellants assert three other grounds for reversal. They claim that certain of the prosecutor's arguments to the jury were incurably prejudicial, that the trial

judge erred in certain remarks he made in his charge to the jury, and that verdicts of acquittal should have been directed on the ground that the defendants as a matter of law could not have been held to have been in possession of the marijuana. Our holding on the question of the search makes it unnecessary for us to decide any of these points.