**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alfonso ACOSTA, Defendant-Appellant.**

**No. 73-4016.**

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1974.

Rehearing En Banc Granted Dec. 18, 1974.

**1331**

John L. Fashing, El Paso, Tex., for defendant-appellant.

William S. Sessions, U. S. Atty., San Antonio, Tex., Edward Marquez, Ronald F. Ederer, Asst. U. S. Attys., El Paso, Tex., for plaintiff-appellee.

Before TUTTLE, WISDOM and GEE, Circuit Judges.

TUTTLE, Circuit Judge:

Alfonso Acosta was found guilty in a non-jury trial of possessing, with intent to distribute, heroin, a schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Agents of the Drug Enforcement Administration obtained a search warrant for 7143 Alameda, El Paso, Texas, trailer space #11 on August 30, 1973 and there seized numerous packets of heroin weighing approximately one and one-fourth ounces. Appellant brings this appeal challenging the validity of the affidavit upon which this warrant was issued, as well as appealing the sentencing procedures used by the presiding judge. We reverse the conviction on the grounds that the warrant was improperly issued, and accordingly do not reach the question of sentencing. Reversed and remanded.

I.

The magistrate issued the search warrant, on the basis of an affidavit of federal Drug Enforcement Administration Agent Oscar Licon. The affidavit set out the following facts:

"On 8–30–73, at approx. 12:00 Noon, a confidential informant of Det. F. Maya stated to me that there was an ounce of heroin located at 7143 Alameda, Space #11, El Paso, Texas in the bathroom. The informant further stated that it belongs to Alfonso Acosta, a Mexican male, approx. 47 years of age, who resides at this trailer. The informant further stated that Acosta was in the act of cutting, diluting the heroin into small packets called papers for resale this same day. The informant stated that Acosta has done the same procedure in the trailer on at least 32 occasions after he has purchased large quantities of heroin. The informant has on another occasion assisted Federal Agents in initiating cases. The informant states positively that on August 30, 1973 at approximately 10:00 p. m. she observed the said heroin in the bathroom of said premises described above and that she knows it is heroin and that it is still present in said premises."

The last sentence of this recital was added at the magistrate's suggestion, for as the affidavit was originally presented to him the magistrate believed "it was not adequate to justify the issuance of a search warrant," for "there was nothing in the affidavit indicating the prior reliability of the informant." In addition to seeking to bolster the affidavit by the detailing of the informant's personal observations, the magistrate questioned Agent Licon and learned the name of the informant. By chance, this informant had been the source of information which had been the basis for a previous warrant issued by the magistrate, and based on *his* own knowledge and *his* past experience with the informant, Magistrate Boyd issued the warrant under consideration today.

At the suppression hearing, Magistrate Boyd testified that

". . . once I learned the name of the informant I immediately reviewed all of these details about the informant's past reliability and on that basis, in addition to the information which Agent Licon said he would swear to under oath about the informant having said she had seen heroin there that day and knew it to be there, at that point I agreed to issue the search warrant. At that point I became convinced that this was a reliable informant and the search warrant should issue."

The magistrate did not feel it necessary to transcribe a recitation of his own information concerning the informant's reliability because it "involved my own knowledge and subjective state of mind." This procedure does not meet the required standards.

## II.

■ The affidavit on its face fails adequately to set out facts sufficient to enable an impartial magistrate to conclude that probable cause existed to permit issuance of a search warrant. The standards to be used in evaluating the facts set forth in the affidavit are well understood and certain. As this Court has recently stated:

"This test is typically referred to as 'Aguilar's two-pronged test.' Spinelli v. United States, 1969, 393 U.S. 410, 413, 89 S.Ct. 584, 587, 21 L.Ed.2d 637, 642. See United States v. Mendoza, 5 Cir. 1970, 433 F.2d 891; Gonzales v. Beto, 5 Cir. 1970, 425 F.2d 963; United States v. Marihart, 8 Cir. 1972, 472 F.2d 809, 811; Note, the Supreme Court—1970 Term, 85 Harv.L.Rev. 40, 55 (1971). The first 'prong' requires that the affidavit disclose particular facts or circumstances which justify concluding that the informant is a reliable or trustworthy person. The second requires specific facts or circumstances tending to demonstrate that the informant, in the instance in question, had gathered his information in a reliable manner." United States v. Chavez, 482 F.2d 1268, 1270 (5th Cir. 1973).

While the second "prong" of the test is satisfied by the detailing of the personal observations of the informant, thereby guaranteeing that the informant is relying on "something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation," Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L. Ed.2d 637 (1969), the first "prong" of the test is left unsatisfied. There is nothing in the affidavit which proves that the informant is reliable. The affiant himself had no personal knowledge as to the reliability of the informant; the fact that the informant had "on other occasions assisted Federal Agents in initiating cases" says nothing about whether the cases thus initiated were successfully prosecuted, whether they were based on information supplied by the informant, or if so, whether the information proved to be accurate. Finally, despite the fact that the affidavit identifies the informant as being "a confidential informant of Det. F. Maya," there is no indication that Det. Maya regarded the informant as reliable, or whether he had past experience tending to show reliability.

In United States v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 the Supreme Court held that where an affidavit supporting a search warrant fails to establish the reliability of the informant, certain corroborative details might be substituted for a statement on reliability. In *Harris* four factors were held together to adequately establish reliability.

Unlike *Harris*, the affiant here could make no statement concerning the trustworthiness of the informant, nor could he make a statement concerning the bad reputation of the defendant. Further, unlike the statement of the informant in *Harris* that he had conducted illicit

transactions with the defendant, thus constituting declarations against penal interest, nothing in the affidavit here suggests that the informant made any statement against her penal interest. While the fact that the informant said she was speaking from firsthand observation, like the informant in *Harris,* lends support to the statements in the affidavit, we do not believe *Harris* stands for the proposition that a statement of firsthand observation alone is a substitute for reliability in evaluating the worth of an informant's statements. In *Harris* this factor was combined with three others, the cumulative effect of which was to offset the failure of the officer to establish the credibility and reliability of the informant. That cumulative effect is lacking here.

### III.

■ We further find that the magistrate's personal information cannot be used to save a defective affidavit. Rule 41(c) of the Federal Rules of Criminal Procedure states specifically:

"A warrant shall issue only on an affidavit or affidavits sworn to before the federal magistrate or state judge and establishing the grounds for issuing the warrant. . . . Before ruling on a request for a warrant the federal magistrate or state judge may require the affiant to appear personally and may examine under oath the affiant and any witnesses he may produce, provided that such proceeding shall be taken down by a court reporter or recording equipment and made part of the affidavit."

This rule seems clearly to require that any evidence relied upon by the magistrate be recorded and made a part of the affidavit. While there was some divergence in views between the Circuits prior to the October 1972 amendment to Rule 41(c) as to whether this requirement of recording oral testimony supplementing an affidavit was required to salvage an otherwise invalid affidavit, this Court has now concluded that such recording of supplementary testimony was not required. *See* United States v. Hill, 5 Cir., 1974, 500 F.2d 315 (No. 73–1098) where this Court, construing the unamended Rule 41(c) which did not prescribe the manner in which oral testimony was to be taken or used by a magistrate in issuing a warrant, held in accord with Eighth and Tenth Circuit decisions that such non-transcribed, oral supplementation to an otherwise invalid affidavit, was proper under the Fourth Amendment and Rule 41(c). *See also* United States v. Beasley, 485 F.2d 60 (10th Cir. 1973); United States v. Marihart, 472 F.2d 809 (8th Cir. 1972) (en banc) petition for cert. filed, 42 L.W. 3611 (Apr. 8, 1974); Leeper v. United States, 446 F.2d 281 (10th Cir. 1971), cert. denied, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1971); United States v. Berkus, 428 F.2d 1148 (8th Cir. 1970); Lopez v. United States, 370 F.2d 8 (5th Cir. 1966).[1]

■ We are, of course, bound by the decision in the *Hill* case, which deals with search warrants issued before the amendment. There is no conflict between our decision today and the *Hill* decision, for in *Hill* this Court specifically stated: "We of course note that under the amended rule such interrogation and the affiant's responses must be recorded and made a part of the affida-

---

1. The First, Second, Third, Fourth, Sixth, Seventh and Ninth Circuits were in apparent disagreement with this use of untranscribed, oral testimony to supplement an affidavit. *See* United States v. Noreikis, 481 F.2d 1177 (7th Cir. 1973); United States v. Hatcher, 473 F.2d 321 (6th Cir. 1973); United States v. Bailey, 458 F.2d 408 (9th Cir. 1972); United States v. Anderson, 453 F.2d 174 (9th Cir. 1971); United States v. Cobb, 432 F.2d 716 (4th Cir. 1970); United States v. Melvin, 419 F.2d 136 (4th Cir. 1969); United States v. Sterling, 369 F.2d 799 (3rd Cir. 1966); United States v. Pinkerman, 374 F.2d 988 (4th Cir. 1967); Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966); United States v. Freeman, 358 F.2d 459 (2d Cir. 1966), cert. denied, 385 U.S. 882, 87 S.Ct. 168, 17 L.Ed.2d 109 (1966); *see also* Poldo v. United States, 55 F.2d 866 (9th Cir. 1932); United States v. Casino, 286 F. 976 (S.D.N.Y.1923).

vit." United States v. Hill, *supra*, 500 F.2d at 322, n. 3. Under the amended rule as quoted above there can be no doubt that any oral additions to the affidavit must be recorded and made a part of the affidavit.

■ Beyond the literal language of Rule 41(c), it has been held that the requirement of the Fourth Amendment that information relied upon to establish probable cause be "supported by oath or affirmation" requires that any information relied upon by a magistrate be taken under oath and that this must be shown in the record. Tabasko v. Barton, 6 Cir. 1972, 472 F.2d 871. While we intimate no view on this question as it applies to state courts, we believe the weight of authority clearly is that any information relied upon by a federal magistrate in determining whether probable cause exists must be made a part of the affidavit or affidavits supporting the warrant. While the precise problem presented in this case has not previously occurred, where it is the magistrate himself who supplies the additional information necessary to constitute probable cause, we do not believe Rule 41(c) provides an exception for this situation.

While one rationale for this requirement that all evidence be part of the affidavit is to ensure that the magistrate has all the information necessary to arrive at a decision, another important rationale is to guarantee that the record is preserved for later review in such a way that new information, either newly discovered or remembered, cannot be used to validate a warrant after it has been issued. The requirement that all facts relied upon by the magistrate be in a written affidavit insures that "the reviewing court may determine whether the constitutional requirements have been met without reliance upon faded and often confused memories." United States v. Anderson, *supra*, 453 F.2d at 177. This important requirement has not been satisfied in this case and accordingly we must find that the affidavit supporting the search warrant was inadequate and the evidence seized under that warrant must be suppressed.

■■ The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.[2]

2. We normally refrain from commenting on dissenting opinions, but due to the extreme novelty of the view espoused by the dissent that the exclusionary rule is to be balanced against police misconduct on a case-by-case basis, we feel obliged to make a brief comment.

Many have criticized the utility of the exclusionary rule. These criticisms are familiar and need not be discussed more fully. There can be no doubt that Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) and Mapp v. Ohio, 367 U.S. 643 (1961) control this case. There is no suggestion in either of these two landmark decisions that the exclusionary rule can be ignored if in the opinion of the reviewing court the police conduct was neither wilful nor negligent. The exclusionary rule is a *per se*, prophylactic measure designed to prohibit the use of evidence seized in violation of the Fourth Amendment. There is no authority for the proposition that the exclusionary rule is to be balanced against the deterrent effect that exclusion might have on police misconduct in an individual case. The

dissent cites no authority for its reliance upon this novel approach.

The dissent refers to United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed. 2d 561 (1974) which declined to extend the exclusionary rule to grand jury proceedings, and Michigan v. Tucker, 417 U.S. 433, 94 S. Ct. 2357, 41 L.Ed.2d 182 (1974), which used a balancing approach in determining the admissibility of statements made by the defendant to police prior to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), where the police had failed to give the defendant the warnings *Miranda* later held to be required. The dissent properly does not argue that these cases are authority for balancing exclusion of illegally seized evidence.

Rather the dissent refers to United States v. Hill, 500 F.2d 315 (No. 73–1098, 5 Cir. 1974) as apparent authority for balancing the exclusion of evidence obtained on an invalid affidavit. As we discussed earlier, *Hill* does not stand as authority for this approach for in *Hill* this Court faced a situation where the warrant was issued prior to

GEE, Circuit Judge (dissenting):

The result reached by the majority seems to me very grievous. Under it a rather high-level heroin dealer—not a mere street pusher—goes free, unpunished and as a practical matter likely unpunishable, for acts in which he was caught red-handed in the course of a search authorized by a conscientiously-issued warrant. He does so, although the magistrate was furnished sufficient facts for an affidavit amply supporting the issuance of the warrant, solely because under the pressure of events all of these facts were not reduced to affidavit form as required by Rule 41(c).[1] The warrant being infirm, the majority brings the exclusionary rule into play to invalidate Acosta's conviction and sentence. If this be the law's demand it must, of course, be honored. Since I do not think it is, I respectfully dissent.

1. *The Deficiencies of the Affidavit.*

*Aguilar*[2] requires a policeman's affidavit to set forth

> . . . some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was "credible" *or his information* "reliable." 378 U. S., at 114, 84 S.Ct., at 1514. (emphasis added).

Beyond peradventure the affidavit in this case fulfils the first of these requirements, and, to my mind, it complies on its face with one of the disjunctive requirements of the second: showing a basis for the policeman's conclusion that the informant's ". . . information [was] reliable." It is admittedly somewhat weak on the informant's intrinsic credibility, though it does not seem to me a very strained construction of the reference to her as being Detective Maya's confidential informant as indicating he placed some credence in her, or of the description of her as having helped Federal Agents in initiating cases as forming a sufficient basis for the inference that the cases were not disasters—as indeed, in fact, they were not. I do not place much weight upon the presence or absence in the affidavit of such magic words as "reliable" or "accurate," which cost little to add and mean little more. Transmitting such signals as these, we may expect affidavits which smell of the lamp and smack of common-law pleading.

At any rate, under *Aguilar* it is not necessary that the informant be shown to be credible; the alternative and sufficient course of showing circumstances justifying a conclusion that his information in this instance is reliable is available. Even paranoids sometimes have enemies, and liars sometimes tell the truth.

Here there are at least strong hints of the informer's reliability. In addition, the affidavit is specific and detailed, telling just about all there was to tell about Acosta and his activities as then

---

1. As Mr. Justice Fortas might have said, he failed the essay contest. Spinelli v. United States, 393 U.S. 410, 438, 89 S.Ct. 584, 600, 21 L.Ed.2d 637 (1969) (dissent) "A policeman's affidavit should not be judged as an entry in an essay contest."

Among the facts, known or made known to the magistrate, but not reduced to affidavit form, were the name of the informant, that she had furnished accurate information which resulted in a heroin arrest not a month earlier, and that her declarations were against her own penal interest.

2. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

---

the October, 1972 Amendments to Rule 41(c) and the Court concluded the warrant was issued properly because the affidavit was proper under the then existing Rule 41(c). In this case, as the dissent agrees, the affidavit is facially invalid, for Rule 41(c) does not permit oral testimony to supplement it. *Hill* in no way suggests that an otherwise invalid warrant can justify the admission of illegally seized evidence if the police acted in good faith.

The good faith of the police has never previously been used to overrule the requirements of the exclusionary rule. The Supreme Court has not modified the exclusionary rule, and accordingly we cannot understand how our dissenting brother can urge that we do so on our own authority.

relevant to his traffic in misery.[3] "A magistrate, when confronted with such detail, could reasonably infer that the informant had gained his information in a reliable way." Spinelli v. United States, 393 U.S. 410, 417, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969). Had such an inference been made, it seems the affidavit in this case would clearly have supported it.

The trouble is our magistrate did not make this requisite inference, or rather declined to make it solely from the proper matter furnished him. Not content with the affidavit, even as supplemented at his suggestion, he went on to require matter beyond it—the informant's name —and only then, when he recognized her as the source of earlier information personally known to him to have been reliable, was he satisfied that a warrant should issue.[4]

A magistrate's ". . . determination of probable cause should be paid great deference by reviewing courts." Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969); see Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). By a parity of reasoning, his refusal to do so until satisfied by consideration of material technically improper, as here, has weight. I am therefore unable to say with any assurance, in view of his testimony quoted at note four above, that he would have issued the warrant without the consideration of improper matter. Its basis was therefore infirm, both constitutionally as based in part on unsworn matter[5] and procedurally, as relying on matter not reduced to affidavit form. Fed.R.Crim. P. 41(c). Thus though I think the majority wrong in holding, as I believe it does, that this affidavit is an insufficient basis for a magistrate's inference of probable cause, I agree that the magistrate's action in issuing the warrant was technically erroneous. Unlike the majority, however, I do not think this concludes the matter.

### 2. The Inapplicability of the Exclusionary Rule.

It is now clear both that the exclusionary rule represents, not a constitutional right, but a judge-made remedy to secure one[6] and that its prime function is to deter future overzealous police conduct by removing the incentive to it.[7] Moreover, ". . . [t]he deterrent purpose of the exclusionary rule necessarily assumes that *the police* have engaged in willful, or at the very least,

---

3. The address where he was, who he was, his age and ethnic group, where in the house the contraband was located, that he was in the very act of diluting and packaging it for street sale, and that the informant had seen it there with her own eyes and knew it was still there.

It is interesting to compare this affidavit with the relevant portion of that in *Aguilar* bearing in mind that three Justices thought even it sufficient:

Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law. 378 U.S., at 109, 84 S.Ct., at 1511.

If the majority are correct in their appraisal of this affidavit, we have indeed come a long way since *Aguilar*.

4. As he testified at the suppression hearing:
. . . *once I learned the name* of the informant I immediately reviewed all of these details about the informant's past reliability and *on that basis*, in addition to the information which Agent Licon said he

could swear to under oath about the informant having said she had seen heroin there that day and knew it to be there, *at that point* I agreed to issue the search warrant. *At that point* I became convinced that this was a reliable informant and the search warrant should issue. (emphasis added).

5. Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933).

6. United States v. Calandra, 414 U.S. 338, at 347, 94 S.Ct. 613, at 619, 38 L.Ed.2d 561, at 571 (1974). Indeed, that is the sole suggested function of the exclusionary rule which could conceivably apply here. The others which have been advanced, avoidance by the judiciary of "the taint of partnership in official lawlessness" and maintenance of "the imperative of judicial integrity," United States v. Calandra, 414 U.S. 338, at 357, 94 S.Ct. 613, at 624, 38 L.Ed.2d 561, at 576–578 (1974) cut no figure in this fact situation.

7. Michigan v. Tucker, 417 U.S. 433, at 447, 94 S.Ct. 2357, at 2365, 41 L.Ed.2d 182, at 194.

negligent conduct which has deprived the defendant of some right." Michigan v. Tucker, 417 U.S., at 447, 94 S.Ct., at 2365, 41 L.Ed.2d, at 194 (emphasis added).

I search this record in vain for such conduct. Informed that Acosta was at that moment preparing his dreary elixirs for sale, the detective hopefully entered his essay in the cosmic contest. The magistrate, unsatisfied but plainly disturbed, questioned him further and satisfied himself in a good faith which shines in the record that probable cause existed to believe him and his informant. "[T]his situation furnishes no occasion to apply the exclusionary rule to bar the evidence of . . . criminality that was obtained in executing the warrant. [The detective] acted properly in going to the magistrate and seeking a warrant. [The magistrate] acted properly in calling for additional information to demonstrate credibility. Thus, the only error attributable to the procedure they followed is a technical one that would in no way serve the deterrent purposes of the rule." United States v. Hill, 500 F.2d 315, at 322 (5th Cir. 1974) [No. 73–1098].

Correctly noting that Rule 41(c) has been amended to require matter supplementing an affidavit to be made part of it since presentation of the affidavit in *Hill*, the majority opinion seeks to dispose of that holding as a precedent on that basis. I do not think it will go away so easily. It is true that the Rule's amendment is one basis of the *Hill* decision. It is also true, however, that the language quoted above appears immediately following the court's conclusion ". . . that the warrant was duly authorized" and constitutes an alternate ground of the decision: that even had the warrant *not* been duly authorized, ". . . this situation furnishe[d] no occasion to apply the exclusionary rule . . . [since] . . . the only error attributable to the procedure they followed is a technical one that would in no way serve the deterrent purposes of the rule." *Ibid.*

I would uphold the district court's implied finding that this police conduct was neither wilful nor negligent and furnished no proper occasion for application of the exclusionary rule. Nor would I expand the rule to "deter" magistrates from failing to record matter upon which they rely, conceiving that they will obey the mandates of reviewing magistrates, such as we, when these are understood. At the least, I would remand to the district court for a fact finding whether the conduct of the police in this case was either wilful or negligent, and be guided accordingly. As here it was plainly at worst inartful, I would affirm.

3. *The Sentencing Procedure.*

So concluding, I would reach the question of the sentencing procedure employed by the court. Two sentencing hearings were held. At the first of these, the court gave Acosta to understand that if he would cooperate with the authorities by revealing his drug sources this would redound to his credit, recessing to permit him to do so.[8] At the second hearing the Court, noting that the "Probation Officer doesn't think you have shown any desire to cooperate," passed a heavy, though not a maximum, sentence.

While I can only sympathize with the court's efforts to reach the drug hierarchy through Acosta, the record suggests the possibility that the court may actually have taken Acosta's refusal to cooperate into account in sentencing. If so, under such authorities as Thomas v. United States, 368 F.2d 941 (5th Cir. 1966) and United States v. Rodriguez, 498 F.2d 302 (5th Cir. 1974), the sentence should be vacated and a new sentence imposed without consideration of this refusal. As we said in *Rodriguez,*

> In Thomas v. United States, . . . we held it a clear abuse of discretion for the sentencing judge to threaten the man before him with a more severe sentence if he did not "come clean" and admit his guilt. As we explained, the defendant retains

---

8. "THE COURT: . . . I am sure you could help clear up some of this if you were of a mind to do so. Of course if you are not of a mind to do it, it doesn't indicate to the Court that you are on the road to rehabilitation. . . . I wish you would talk to the Probation Officer about this. . . . I hate to see as good a mind as you have got be wasted. Talk to him and let's see if we can't do something."

important Fifth Amendment rights after the jury reaches a verdict, rights which must not be made the price of sentencing leniency. The court cannot place the defendant in the dilemma of either abandoning his Fifth Amendment rights or risking a harsher sentence.

True it is that in both cases the court was urging the convicted defendant to acknowledge only his own guilt, but I am unable to see how Acosta could have implicated others without, at least tacitly, admitting his own complicity. I would therefore affirm his conviction, but vacate his sentence and remand for resentencing.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk shall set a briefing schedule for the filing of supplemental briefs.