2009 VT 1




State v. Robinson (2007-321)


 


2009 VT 1


 


[Filed 16-Jan-2009]


 


 


NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports.  Readers
are requested to notify the Reporter of Decisions, Vermont Supreme Court, 109 State Street,
 Montpelier, Vermont05609-0801 of any
errors in order that corrections may be made before this opinion goes to press.


 


 



 
 2009 VT 1

 

  



 
 No. 2007-321

 

  



 
 State of Vermont

 

 
 
 Supreme Court

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 On Appeal from

 

 
 
      v.

 

 
 
 District Court of Vermont,

 

 
 
  

 

 
 
 Unit No. 2, Addison
 Circuit

 

 
 
  

 

 
 
  

 

 
 
 Na-Im
 Robinson

 

 
 
 August Term, 2008

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Helen
 M. Toor, J.

 

 
 
  

 

 William H. Sorrell, Attorney General, and David Tartter, Assistant Attorney General,


  Montpelier, for
Plaintiff-Appellee.


 


Matthew F. Valerio, Defender
General, and Rebecca Turner, Appellate Defender, Montpelier,


  for Defendant-Appellant.


 


 


PRESENT:  Reiber, C.J.,
Dooley, Johnson, Skoglund and Burgess, JJ.


 


 


¶ 1.            
REIBER, C.J.  Defendant Na-Im
Robinson appeals from the Addison District Court’s denial of his motion to
suppress evidence obtained upon execution of a search warrant on his vehicle. 
We conclude that the judge lacked probable cause to issue the warrant. 
Thus, we reverse.


¶ 2.            
On May 6, 2004, a Vermont police
officer received information from a confidential informant that a
twenty-six-year-old black male named “Naim” would be
driving to Vermont from Pennsylvania with cocaine in his
vehicle.  The informant described the vehicle as a silver Ford Taurus with
New Jersey license plates, and said that it would enter Vermont on Route 4 and
then “probably” travel north on Route 30 toward Middlebury between 12:30 and
1:30 p.m. that day.  Based on this information, the officer traveled south
from Middlebury to Route 4, where he turned west toward the New York border.  He soon saw a silver
Taurus with New Jersey
plates, driven by a young black male, traveling east.  He turned around to
follow the vehicle.  The officer observed that the vehicle was speeding,
and also saw it make an illegal pass.


¶ 3.            
After calling in another officer to assist, the first officer pulled the
vehicle over and identified defendant as the driver.  The officers
informed defendant that they had reason to believe he was trafficking cocaine,
which he denied.  Defendant also denied consent to search the
vehicle.  He called his mother, a Middlebury resident, and she came to
pick him up.  He left his car with the officers, and they impounded the
vehicle and applied for the search warrant at issue here.


¶ 4.            
In the affidavit in support of the search warrant, one of the officers
stated that the informant “has provided me reliable and credible information in
the past.  I have been able to verify this [informant’s] previous
information and found it creditable.  This [informant] is cooperating . .
. for financial reasons and not because of current criminal charges.”  The
affidavit, which was typed, also had a handwritten addendum stating that “[t]he information this [informant] has provided has concerned AddisonCounty cocaine deals, their customers,
addresses, and vehicles that they are driving.  I have been able to
confirm that this information was accurate.”  Based on the affidavit, the
court found probable cause to issue a search warrant for the car and any
containers therein.  Upon executing the warrant, the officers found
eighteen plastic baggies containing a total of approximately ten ounces of
cocaine in a suitcase in the trunk, along with drug paraphernalia.


¶ 5.            
Defendant moved to suppress the evidence obtained in executing the
search warrant on the basis that the affidavit in support of the warrant
established neither the informant’s reliability nor the basis of his or her
knowledge.  The trial court denied the motion, finding that the affiant’s
statement, although it did not contain “great detail,” was sufficient to conclude
that the informant had provided reliable information in the past.  


¶ 6.            
Our review of the trial court’s finding of probable cause is
deferential.  State v. Goldberg, 2005 VT 41, ¶ 8, 178 Vt. 96, 872 A.2d 378.  “Generally, probable cause exists when
the affidavit sets forth such information that ‘a judicial officer would
reasonably conclude that a crime had been committed and that evidence of the
crime will be found in the place to be searched.’ “  Id. (quoting State v. Morris, 165 Vt. 111, 129, 680 A.2d
90, 102 (1996)).  We view the affidavits in support of probable cause in a
“common sense manner” and do not subject them to “hypertechnical
scrutiny.”  State v. Defranceaux,
170 Vt. 561,
562, 743 A.2d 1074, 1075 (1999) (mem.) (internal quotations and citation omitted).  When, as in
this case, the finding of probable cause rests on hearsay incorporated into an
affidavit, we employ the two-part approach codified in Vermont Rule of Criminal
Procedure 41.[1] 
The Rule requires that there be “a substantial basis for believing the source
of the hearsay to be credible and for believing that there is a factual basis
for the information furnished.”  V.R.Cr.P. 41(c).


¶ 7.            
Defendant argues that the affidavit in this case did not meet either the
credibility requirement or the factual-basis requirement.  We agree that
the affidavit was insufficient to establish the credibility Rule 41 requires.


¶ 8.            
Credibility may be established “in either of two ways: (1) by
demonstrating [the informant’s] inherent credibility as a source; or (2) by
demonstrating the reliability of the information he or she has provided on the
occasion in question.”  Goldberg, 2005 VT 41, ¶
11.  Defendant contends that the affidavit did not establish the
informant’s inherent credibility because the affiant’s statements about the
informant’s past performance were so “conclusory” and
“vague” as to prevent the judge from making an “independent
judicial determination” of the informant’s credibility.  See Aguilar,
378 U.S.
at 114-15.  Instead, defendant contends, the court had to rely solely upon
the officer’s assessment of credibility.  We agree with defendant that the
information available to the judge was insufficient to allow the independent credibility
assessment our law requires.


¶ 9.            
An informant’s inherent credibility is often established by evidence
that he or she has provided accurate information in the past.  Morris,
165 Vt. at
130, 680 A.2d at 102-03.  There is a split in the
state and federal courts as to whether an officer’s bare assertion that an
informant is “credible” or “reliable,” or that the information provided was
“true” or “correct,” is sufficient to support a finding of inherent
credibility.  See 2 W.R. LaFave, supra, §
3.3(b), at 123 nn. 99-112 (citing
cases).  There is broad agreement, however, that an affiant’s
statement that an informant has provided information leading to arrests,
convictions, or the discovery of admissible evidence does suffice to show inherent
credibility.  Id. at 121; see also, e.g., McCray v. Illinois,
386 U.S. 300, 304 (1967) (expressing “no doubt” that there was probable cause
for warrant based on officer’s testimony that informant had provided
information resulting in numerous convictions of named individuals); United
States v. Formaro, 152 F.3d 768, 770 (8th Cir.
1998) (informant’s credibility established by affiant’s recitation that
informant “had supplied information fifteen times and the information had led
to two search warrants, four arrests, and five drug charges”).[2]  Here, the situation is somewhere
between these two extremes.  As noted, the officer stated that the
informant:


has provided me reliable and creditable information in the
past.  I have been able to verify this [informant’s] previous information
and found it creditable. . . .  The information this [informant] has
provided has concerned AddisonCounty cocaine deals,
their customers, addresses and vehicles that they are driving.  I have been
able to confirm that this information was accurate.


 


This statement amounts to
something more than a bare assertion of reliability, and presents a close
question.  The officer affirmed that the informant’s past information had
“concerned” illegal activities, but did not aver that the information had led
to convictions, arrests, evidence, or even search warrants.  It will be
useful to review the cases from the several other jurisdictions that, like Vermont, still apply the
Aguilar/Spinelli standard, as well as
the United States Supreme Court’s pre-Gates cases.


¶ 10.         In
Alaska, the
courts require more than a mere assertion that an informant has provided
reliable information in the past.  Clark v. State, 704 P.2d 799, 804 (Alaska Ct. App. 1985). 
Rather, the affidavits must aver that the informant’s past information resulted
in particular arrests or convictions.  Schmid
v. State, 615 P.2d 565, 575 (Alaska
1980) (informant worked with police for four years and had provided information
resulting in ten seizures of narcotics).  In Massachusetts, even a
statement that an informant had “previously provided information which led” to
the arrest of a named individual was held insufficient, because the affidavit
failed to specify what sort of information the informant had provided, or how
that information was connected to the arrest.  Commonwealth
v. Rojas, 531 N.E.2d 255, 258 (Mass.
1998).  


¶ 11.         There
is some authority for the proposition that an affidavit like this is sufficient
to establish credibility, but we do not find it persuasive.  In Washington, a line of
cases seems to suggest that bare assertions that an informant has given
reliable information in the past are sufficient to allow a magistrate to make
an independent assessment of credibility.  See State
v. Smith, 756 P.2d 722, 726 (Wash. 1988)
(en banc); State v. Woodall, 666 P.2d 364, 366 (Wash. 1983) (en banc).  But the
Washington cases that arguably suggest that affiants’ conclusions about
credibility are sufficient all misrepresent the facts and reasoning of the
earlier case on which they rely, omitting to mention that the affidavit in that
case, in addition to stating that the informant was “reliable” and had given
“true and correct” information in the past, stated that the informant had made
controlled drug purchases as well.  See State
v. Fisher, 639 P.2d 743, 746 (Wash.
1982) (en banc).  We are not persuaded by the rather pro-forma
analysis in the cases purporting to apply Fisher.


¶ 12.         The
pre-Gates cases from the United States Supreme Court also support the
conclusion that the affidavit here did not establish probable cause.  Most
closely on point is United States v. Jones, 362 U.S. 257 (1960). 
In that case, the Court held that an informant’s credibility was established,
and the issuance of a warrant proper, because the affiant stated not only that
the informant had provided accurate information in the past, but also that the
defendant was known to the police as a narcotics user, and that the informant’s
information was corroborated by other sources.  Id. at 271.  Here, the confidential informant was the only
source of the information relied on by the affiant, defendant was otherwise
unknown to the police, and there were no other indicia of credibility. 
The judge here was not informed, as Aguilar and our cases require, “of
the underlying circumstances from which the officer concluded that the informant . . . was ‘credible’ or his
information ‘reliable.’ “  Aguilar, 378 U.S.
at 114 (emphasis added).  As the Aguilar
 Court noted, conclusory
affidavits present the spectre—offensive to
constitutional guarantees—that “ ‘the inferences from
the facts which lead to the complaint’ will be drawn not by a neutral and
detached magistrate . . . but instead, by a police officer
‘engaged in the often competitive enterprise of ferreting out crime.’ “  Id. at 115 (quoting
Giordenello v. United States,
357 U.S. 480, 486 (1958) and
Johnson v. United States, 333 U.S. 10, 14 (1948)). 


¶ 13.         Indeed,
the information in the affidavit here is similar to language disapproved under
the Aguilar/Spinelli framework by the
United States Court of Appeals for the Fifth Circuit in United States v.
Acosta, 501 F.2d 1330 (5th Cir. 1974).  The affidavit in Acosta
stated that the informant had “on other occasions assisted Federal Agents in
initiating cases” but provided no detail as to the nature of that
assistance.  Id. at 1331.  The Acosta court held this language
insufficient to establish reliability because it said “nothing about whether
the cases thus initiated were successfully prosecuted, whether they were based
on information supplied by the informant, or if so, whether the information
proved to be accurate.”  Id. at
1332.  Here, the affidavit is similarly vague as to the nature of
the past information purportedly provided by the informant, and left the judge
equally unable to make an independent evaluation of the facts underlying the
officer’s determination that the informant was credible.  “ ‘The “reliable information in the past”
recital . . . lacks any factual indication of how reliable the
informer is.  The magistrate is, in effect, relying upon the factual
determination of the arresting officer that the informer is sufficiently
reliable, and not upon his own independent judicial determination.’ “  2 W.R. LaFave, supra,
§ 3.3(b) at 125 (quoting Comment, 53 Cal.
L. Rev. 840, 846 (1965)).


¶ 14.         Although
the affidavit here did provide more information than that in Aguilar,
the additional information did little or nothing to allow the judge independently
to draw the inference that the informant was credible and that illegal drugs
were therefore likely to be found in defendant’s vehicle.  The mere
statement that the informant had in the past provided unspecified, albeit
purportedly “creditable,” “accurate,” or “reliable” information that
“concerned” drug deals or dealers does not establish the informant’s inherent
credibility.


¶ 15.         The
State also contends, however, that the affidavit established that the
informant’s information on this particular occasion was credible, even if the
affidavit was insufficient to show the informant’s inherent credibility. 
The State’s argument on this point is that the information provided
here—namely, that defendant would be driving a silver Ford Taurus on a
specified highway at a specified time—was sufficiently corroborated by police
“to the point where it [was] reasonable for them to rely on it as
accurate.”  Morris, 165 Vt.
at 130, 680 A.2d at 102-03.[3]  While we agree with the State that
predictive information could, in a different case, provide such a wealth of
detail about future behavior as to be effectively self-verifying, this is not
such a case.


¶ 16.         Our
recent decision in State v. Goldberg is instructive on this point. 
In that case, an informant seeking leniency on an unrelated criminal charge was
cooperating with police in a drug investigation.  The informant told the
officer that marijuana was being grown in a specified house by certain named
individuals.  The officer “corroborated” the allegations by driving by the
house and by determining, via a DMV records check, that some of the named
persons lived in the house.  The officer observed no suspicious activity
during his drive-by surveillance.  We held that the corroboration of mere
innocent details did not prove that the informant’s allegations of drug
offenses were reliable.  2005 VT 41, ¶ 14. 
We noted that, while the officer’s efforts “did corroborate some of the
peripheral details of [the informant’s] story, [they] did nothing to confirm
the allegations of criminal conduct.”  Id. (emphasis added).
 “Overall,” we noted, “the affidavit provided little evidence that [the
officer] had corroborated [the informant’s] information about the marijuana
growing operation.”  Id. 



¶ 17.         Cases
in other jurisdictions on more similar facts support this conclusion.  The
Supreme Court of Appeals of West
 Virginia concluded, in State v. Hlavacek, that probable cause was not established by
the mere corroboration that the defendant’s vehicle was proceeding
down a well-traveled highway in a direction consistent with the informant’s
allegation.  407 S.E.2d 375, 382 (W. Va. 1991).  The court held that,
although “[i]ndependent
police work may corroborate information contained in an affidavit,” the
corroborated details “must be both significant and specific in order to . . .
impart some degree of reliability upon the confidential source of the
information.”  Id. 
In Hlavacek, the court noted, the corroboration
“consisted of nothing more than that the appellant was not at home and then
later [that he was] driving on a nearby well-traveled highway in a direction
which happened to be consistent with the informant’s information.”  Id.


¶ 18.         Similarly,
the New Jersey Supreme Court, applying the Gates standard but
acknowledging the continued vitality of Aguilar and Spinelli,
has required corroboration of more than mere innocent details.  See State v. Smith, 713 A.2d 1033, 1040-41 (N.J. 1998). 
The Smith court held that probable cause was absent because the police
had corroborated nothing more than “neutral information” concerning the
defendant’s description and location.  Id. at 1041.  In Smith, the informant told the
officer that the defendant would be going in and out of the lobby of his
building making drug sales, but the officer observed only that the defendant
was standing outside the building.  The court noted that “the police
corroboration did not include the observation of any suspicious drug transaction
or criminal activity.”  Id. 
Here, as in Smith, the “police corroboration only of the suspect’s
description and location did not bolster the tip’s reliability or add to its
weight.”  Id. 
The information corroborated in our case was not “significant” or “specific,” Hlavacek, 407 S.E.2d at 382, and thus was
insufficient to support a finding of probable cause.[4]


¶ 19.         Accordingly,
the search warrant should not have issued, and the motion to suppress the evidence
obtained via its execution should have been granted.  As in Goldberg,
the application of the exclusionary rule here “encourages police to diligently
corroborate information from a potentially unreliable source.” Goldberg, 2005 VT 41, ¶ 19. 
Because we conclude
that the affidavit did not provide a sufficient basis to conclude that
the confidential informant was credible, and that conclusion is
dispositive of the
appeal, we do not reach defendant’s argument that the affidavit
also failed to
demonstrate the basis of the informant’s knowledge.  


Reversed and
remanded.


 


 



 
  

 

 
 
  

 

 
 
 FOR THE COURT:

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
  

 

 
 
 Chief
 Justice

 

  



















[1] 
The test embodied in the Rule is based on two United States Supreme Court
cases, Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli
v. United States, 393 U.S. 410 (1969).  See
Reporter’s Notes, V.R.Cr.P. 41; State v. Morris,
165 Vt. 111,
129, 680 A.2d 90, 102 (1996).  The United States Supreme Court has
since abandoned Aguilar and Spinelli in
favor of the “totality of the circumstances” analysis propounded in Illinois
v. Gates, 462 U.S. 213 (1983).  Gates has been widely
criticized, and many other state courts have declined to follow it as a matter
of state law.  See generally 2 W.R. LaFave, Search
& Seizure § 3.3(a) at 106 n. 26 (4th ed. 2004) (citing state cases); id.
at 107-13 (criticizing Gates, citing critical
commentary).  We need not consider whether we would follow Gates as
a matter of Vermont
constitutional law because the governing Rule of Criminal Procedure continues
to contain the Aguilar and Spinelli
requirements.







[2] 
We considered the question of what level of past performance would suffice to
show credibility in State v. Maguire, 146 Vt. 49, 498 A.2d 1028 (1985),
but in that case we applied the totality-of-the-circumstances analysis from Gates
because the defendant failed to preserve his arguments based on the Vermont
Constitution and, apparently, Rule 41.  We had no difficulty concluding
that the Maguire informant’s past information, which had led to numerous
controlled drug purchases, arrests, and search warrants that had been upheld on
appeal, was sufficient to establish credibility.  Id. at 54, 498 A.2d
at 1031.







[3] 
The State does not argue that the informant’s statements on this occasion were
credible by reason of being against his or her penal interest.  Cf. State
v. Ballou, 148 Vt. 427, 435 n.3, 535 A.2d 1280, 1284 n.3
(1987) (fact that informant’s statement to affiant was against informant’s
penal interest had bearing on judge’s assessment of informant’s reliability).







[4] 
We note finally that several of the cases cited by the State on this point are
reasonable-suspicion cases, and thus have little application to this case,
which concerns the higher probable-cause standard.  See State v.
Cunningham, 2008 VT 43, ___ Vt. ___, 954 A.2d 1290; State v. Crandall,
162 Vt. 66, 644 A.2d 320 (1994).  We express no opinion on whether the
facts here sufficed to establish reasonable suspicion, but note that it is
entirely possible that a confidential informant’s tip might provide a
reasonable suspicion to support an initial stop, but not probable cause for a
search or arrest.  See, e.g., United States v.
Campbell, 920 F.2d 793, 797 (11th Cir. 1991).